# Dennis *versus* Eckhardt.

Where a lawful business is carried on at unreasonable hours to the annoyance and discomfort of neighbors, and until it becomes a nuisance, equity will interfere by injunction to restrain it.

At NISI PRIUS.

Motion for special injunction.

Opinion by

THOMPSON, J.—It is essential in all civilized communities that the individual dominion of property should be sedulously restrained within the principle that each owner should so use it as not to injure his neighbor, "*sic utere tuo ut alienam non laedas.*" The principle is necessary to preserve the safety and health, as well as morality of the people, and hence a power must exist somewhere to enforce it. If this were not so, unwholesome establishments, filthy styes, and distracting machinery might and would be erected at the very doors of private dwellings, to the destruction of all peace, health, and comfort of

[Dennis *v.* Eckhardt.]

the inmates. A community in which such privileges should exist could not long exist as civilized.

The courts, through the medium of their common law forms, can only act indirectly for the suppression of such evils, by the imposition of damages for injuries already done, leaving, of course, the cause still in existence. No one can well doubt that where there is a case for damages the establishment is a nuisance; and all will readily agree that to leave it in full operation to breed disease as well as future lawsuits is to have attempted redress by a very inadequate remedy.

The case in hand is the shop of a tinsmith and sheet iron worker, who, it seems, has erected his shop, a very thin, loose building of boards, some eight feet from the back building and sleeping rooms of the complainant, and there carries on work, generally beginning in the morning before or by daylight, and resuming it again in the evening at or about 8 o'clock P. M., and keeping it up till 11 o'clock at night, having, generally, employment elsewhere through the day. The noise of the hammering and pounding in such an establishment, we well know, is usually very great, and the affidavits describe it as intolerable in this instance, so much so that the complainant and his family can scarcely hear each other converse, have been obliged to abandon their chambers next to the shop, and are every night and morning deprived of their rest by the persistent hammering of the defendant.

The complainant alleges that he has appealed in vain to him to abstain from his disturbing noises in the mornings and evenings; that although sickness and death were in the house, he has disregarded his appeals. So, too, he disregarded the notice of an intended application for a special injunction given to him in this case, and leaves us without explanation of his conduct or denial of the facts alleged. Taking, then, these facts before us as true, for no one disputes them, can he be restrained from the exercise of his trade on his own premises, although it be noisy?

I will, at this time, only examine the main questions of law involved in this case, so far as may be necessary to an understanding of the decision which may be made under the present aspect of the case.

The first thing to be thought of is, whether any decree, preliminary or otherwise, can be made without a trial at common law, and a verdict settling the fact of a nuisance on account of the manner in which the defendant carries on his business. The object of a trial, we may remember, however, is to settle the right where it is in dispute, but we have, at this moment at least, no disputed fact before us. The defendant interposes neither fact nor argument against the present motion, and we

[*Dennis v.* Eckhardt.]

are to decide on the case before us on the insufficiency of the facts to establish the ground of complaint, viz: that the noises emanating from the defendant's shop at unseasonable hours especially, and at all hours, is a nuisance. That the affidavits establish this I have no doubt, and also that these noises are a nuisance, if a nuisance can be created by such means.

The business of a tin and sheet iron manufacturer is lawful; his shop is not a nuisance *per se.* This must be conceded. If it were, no doubt could exist in regard to the remedy by injunction. Wherein consists the difference between a nuisance *per se* and where a lawful business is carried on so as to become a nuisance? It is not, I apprehend, in the remedy, but only in the proof of it. That once established, either by non-denial, trial at law, or otherwise, it falls into the same current of remedy in chancery as if it were a nuisance *per se.* We have many cases in the books, English and American, of recoveries against lawful establishments, manufactories and the like, on account of noises, &c. Such recovery could only be had on the ground of nuisance. In *Gill* v. *Bradley,* 1 Lutwhich, 29, was a recovery against a blacksmith on account of the noises incident to his business. *Mumford and others* v. *The Wolverhampton Railway Company,* 1 Hurl. & Norm. 34, was on account of a steam-boiler shop.

In *Davidson* v. *Isham,* 1 Stock R. 186, Ch. Williamson expressed freely his opinion as to noises from manufacturing establishments and shops, in the heart of a city, becoming private nuisances, and liable to be restrained and controlled by proceedings in chancery. *Fish* v. *Dodge,* 4 Denio, 311, was a case against a steam engine factory, and it was fully agreed that a recovery might be had on account of noises. So in 9 Iredell, N. C. Rep., *Dargan Waddell,* 244, damages were allowed against the owner of a stable on account of noise made by horses stamping in the night time. These cases suffice to show that there is no exemption because the business may be lawful, if its exercise works harm or injury to others.

We have often held that repeated acts of trespass amounting to a nuisance as to a private right, may be enjoined in Pennsylvania. *Scheetz's Appeal,* 11 Casey, 88, and cases there cited.

But this only when there is no adequate remedy at law. I cannot doubt that a constant annoyance, which at law cannot be abated, is never remedied by damages. The loss of health and sleep, the enjoyment of quiet and repose, and the comforts of home cannot be restored or compensated in money; it may afford consolation, but it does not remedy the evil, if that goes on, to be paid for by instalments. The law operates on the past only, while equity can and will act on the present and future, will abate the nuisance itself, and restore the injured

[Clark *v.* Martin.]

party to his rights. In this case a suit or suits would not be an adequate remedy for the evils complained of, in my opinion.

But we should not interfere by preliminary injunction, except in cases of irreparable mischief or injury. Have we not such a case here? It may be asked if the mischief is not irreparable which entails the want of health as a consequence of annoyances. A chancellor does not wait till noisome trades and unwholesome gases kill somebody before he proceeds to restrain; or that the threatened destruction of pictures, charts, &c. &c., has taken place. His remedy is preventive, and if the tendency of the acts complained of be injurious, so that the injury may be irreparable, he will proceed to prevent them.

Dr. Spencer states his experience of the noises from the defendant's shop, while attending the plaintiff's family, and declares his belief that it greatly interfered with his efforts to relieve his patients, and he gives his belief that it would jeopard the life of a patient, in the crisis of a fever, by preventing rest and sleep. I do not forget the admonition against using the strong arm of the chancellor, but that strength was given, and intended to be used, in proper cases, and I think this is one of them as it now stands before us. What may be made to appear on answer, pleadings and proofs, if the case comes to that, I do not anticipate nor prejudge; it is of the case, as it is now, that I treat. I am therefore of opinion that the defendant should be restrained from using his tin and sheet-iron workshop, as a workshop, until further order of the court. Let the decree for a preliminary injunction be drawn and entered on the plaintiff's giving bond with sufficient sureties, in $1000, to the defendant, conditioned to answer in damages, in case of loss by reason of this injunction.