## James Gavigan *v.* The Atlantic Refining Company, Appellant.

*Nuisance—Storage of petroleum—Evidence—Question for jury.*

In an action to recover damages for a nuisance, it appeared that defendant, an oil company, purchased a lot adjoining plaintiff's house, in a residential neighborhood, and erected thereon tanks and a warehouse for the storage of carbon oil and gasoline. The evidence on behalf of the plaintiff, although in all respects substantially contradicted by the testimony on behalf of the defendant, tended to show that the odor from the oil and gasoline made the occupation of plaintiff's house extremely uncomfortable, producing nausea, compelling him to close the windows in hot summer nights in order to secure sleep, preventing him from occupying a porch on one side of his house, injuriously affecting his health; and, also, that waste oil was permitted to percolate through the earth, saturating the soil near his house, and running into his cellar. Some of the evidence showed that these conditions continued after the suit was brought. The court instructed the jury that if they believed the evidence for the plaintiff they should exercise their best judgment and soundest discretion as to the damages, considering the injury to the reasonable use of the property, and the effect upon the plaintiff's health, and his actual physical discomfort, but allowing nothing for injury to the real estate. *Held*, (1) that the defendant's establishment was not a nuisance per se; (2) that whether it was a nuisance at all depended wholly on the proof; (3) that the question in the case was not one of negligence or no negligence, but of nuisance or no

nuisance; (4) that all that was necessary for the plaintiff to show was that the defendant selfishly carried on a lawful business in a populous neighborhood greatly to plaintiff's injury; (5) that there was sufficient evidence in the case that the injury complained of was peculiar to the plaintiff, and distinguishable from that suffered in common by others in the same neighborhood; (6) that as the evidence of matters transpiring after the suit was brought was not offered as a ground of recovery, but simply to show the character of the nuisance, which was the same then as before, and as it was strictly confined to its purpose by the court, its admission was not error; (7) that under the peculiar circumstances of the case it would be impossible to lay down any rule to guide the jury in their estimate of damages, and, therefore, the instructions to the jury as to damages were adequate; (8) that a verdict for plaintiff for $1,286 does not indicate that the jury exceeded the limits of sound discretion, and the judgment thereon should be sustained.

Argued Feb. 24, 1898. Appeal, No. 22, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., March T., 1894, No. 637, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for nuisance. Before EDWARDS, J.

At the trial plaintiff introduced evidence tending to show material discomfort and injury in the use of his property by the reason of oil escaping from defendant's petroleum storage plant.

When John E. Roche, a witness for plaintiff, was on the stand, counsel for the plaintiff proposed to prove that witness saw an oily substance in the ditch, the city sewer, in the summer of 1894, shortly after the suit was brought, and at that time and previous thereto, he detected an offensive smell about the premises there; this for the purpose of showing the condition of the premises at and before the bringing of the suit.

Defendant objected to the offer as immaterial, irrevelant and incompetent.

Objection overruled and bill sealed. [21]

The court charged in part as follows:

The plaintiff purchased his house and lot about fourteen years ago. He entered into possession of his property at that time, and has occupied it continuously up to the present day. He and his family live upon it. After the plaintiff purchased his property, the defendant erected its oil plant for the purpose of receiving, storing and distributing oil of various kinds. As

you have heard, the business is extensive.   [I need not mention the different kinds of oil sold by the defendant, nor the extent and character of the buildings erected by the defendant for the purpose of carrying on its business.   These buildings and the situation of defendant's plant have been fully described to you by the witnesses.   The number and size of the storage tanks ; the character of the boiler house, the cooper shop and the sheds ; the high wall which in part incloses the plant ; the method of pumping the oil from the railroad tanks to the storage tanks ; the nature and elevation of the ground between the plaintiff's house and defendant's buildings,—all have been detailed to you.   . The testimony of the witnesses and the maps in evidence will enable you to understand easily the relative situation of the two properties.] [1]

The plaintiff living upon his property is entitled to its reasonable enjoyment.   He has a right to complain if his neighbor by his conduct causes him actual, substantial injury, either in the use of his property or in his health and comfort.   The defendant also is entitled to the reasonable and lawful use of its property.   So far as the evidence shows, the defendant is conducting a lawful commercial business.   The question cannot be submitted to you as to whether or not the defendant has a right to erect and maintain an oil plant on its property, but, as I shall further explain to you, the question is : Did the defendant previous to March, 1894, in carrying on a business, lawful in itself, carry it on in such a manner, or was the business necessarily of such a character that it caused the plaintiff substantial injury in the enjoyment of his property, and in his health and physical comfort?   This is one of the main questions you must consider.

People living in a populous city, such as Scranton, must suffer, one in common with the other, certain inconveniences and discomforts.   They are the necessary and inevitable consequences of living in a large city.   This is particularly true as to the noise and dust on the public streets, the continuous rumbling of street cars from early morning until late at night, and the roar of railway traffic on the railways which are great highways of commerce.   The same proposition is true to a certain extent as to manufacturing industries, factories, coal mines, iron and steel works, planing mills and other such works, owned and

operated by private individuals and corporations. In the course of the progress and development of a town like Scranton, one must expect inconveniences and discomforts. Smokestacks, smoke and odors, are necessarily incidental to the operation of many of the industries of the city. The smoke and odors ascend into the air and impregnate it. The community at large suffer some inconvenience and annoyance on account of this. But such inconvenience and annoyance must be endured by the public without redress. No damages can be recovered by anybody under such conditions. The individual must sacrifice some comforts for the sake of the general welfare. Nor can a person recover damages if his personal preferences as to choice of residence are interfered with. A livery stable, a saloon or a distillery may be located next to one's residence, and would naturally diminish its comfort and value, but the owner would be without redress so far as mere proximity is concerned. At the same time, if the business is so conducted as to affect the reasonable use of adjoining property or the health of its occupants, such tangible and substantial injuries might sustain an action for damages. [So that to enable a plaintiff to recover damages in a case, such as we are now trying, it must be shown by the fair weight of the testimony that he has suffered actual and substantial injury peculiar to himself, either in the reasonable and necessary use of his home, or in his health and physical comfort. Are you satisfied that such injury has been shown in this case? If you are satisfied that such injury has been shown, is it to be attributed to the business carried on by the defendant, or to the manner in which this business was conducted?] [2]

[Let us examine the nature of plaintiff's claim. He says, first, that the soil of his land was saturated with oil escaping from the defendant's plant and percolating through the intervening lots, reaching plaintiff's cellar; second, that the odors and smoke from defendant's works were unwholesome and offensive, and of such a character that the plaintiff had to close the doors and windows of his house, especially in the summer; and, third, that the effect upon his health was injurious. The character of the plaintiff's claim is, therefore threefold.] [3]

[I shall now call your attention to the testimony in the case. You have the statements made by the plaintiff and his witnesses;

I need not go over it in detail because you have undoubtedly a clear recollection of the whole testimony in the case.] [4] As to the injury to the real estate of the plaintiff on account of the alleged impregnation of the soil by the percolation of oil, it is my duty to say to you that there is no evidence which would justify you in allowing him any damages on that account. It does not seem that the productive capacity of the soil has been diminished; the gardening has been going along from year to year. [The alleged saturation of the soil with oil as testified in this case, if you believe it, may have interfered with his reasonable enjoyment of his home, for the reason as it is said, that the oil oozed into the cellar under the house. You must consider all the testimony bearing upon this question, the testimony of the plaintiff and his witnesses, and the testimony of the defendant's witnesses. Is it true that oil was allowed to escape in such quantities from the defendant's plant that it went through the intervening land and saturated a part of plaintiff's lot? Can you find this from the fair weight and preponderance of the testimony? If you should find such to be the fact, and that the reasonable use of his home by the plaintiff was injured on account of that fact, then you have a right to take it into consideration in estimating the amount of damages to which the plaintiff is entitled.] [5]

[You have also heard the testimony of the witnesses on the part of the plaintiff, referring to the unwholesome odors and smoke coming from defendant's plant in such quantities and with such strength as to make it necessary for him and his family to retire indoors in the summer months and to close the windows and the doors. You have also heard the testimony of the defendant's witnesses on this point. Consider it carefully, and if you find the situation as described by the plaintiff and his witnesses you have a right to consider that in arriving at your verdict.] [6]

[There is also some testimony as to the effect of the unwholesome smells and smoke upon the plaintiff's health. He testifies to loss of appetite and nausea. Is his statement on this question borne out by the evidence? Did he suffer from the condition of the atmosphere testified to by him and his witnesses, and was this condition created and caused by the operation of the defendant's plant? In arriving at a conclusion on

these questions you must consider the whole testimony. Several witnesses on behalf of the defendant have sworn that there was no escape of oil at any time in the plant in any appreciable quantities, that the soil between their plant and Mr. Gavigan's property was not saturated with oil, that the odors were not unwholesome and injurious, and that the business carried on by the defendant did not in any way affect the health of the persons employed in and around the plant. If the testimony of the defendant's witnesses is true and describes the correct condition of the plant and of the operations carried on there, I do not see how the plaintiff can substantiate his claim for damages against the defendant. But if the testimony of the plaintiff and some of his witnesses is correct that the land surrounding the plant was saturated with oil; that the odors were of the character described by them, and that the effect upon the plaintiff's health was such as he has described, then you would have a right to conclude that he has a just claim for damages against the defendant.] [7]

[If you should find that the plaintiff is entitled to a verdict at your hands you must be careful in estimating the amount of his damages. There is no testimony in the case estimating the amount of damages in dollars and cents. There is no testimony which would justify you in allowing the plaintiff anything on account of injury to the real estate as such, and in considering the injury to his reasonable use of his own property, the effect upon his health and the actual physical discomfort suffered by him, you must use your best judgment and soundest discretion in deciding what amount the plaintiff is entitled to if anything.] [8]

I have not gone over the testimony minutely; it is to be all considered by you. The description of the two properties ; the condition of the sewers on Poplar street and Roche Court; the nature and character of the smoke and odors coming from defendant's plant, as well as the existence of other industries in the immediate neighborhood ; the location of the crematory, and of the dumping ground for garbage, the proximity of cesspools,— all these facts have been referred to by one witness or another upon the witness stand. Consider all the testimony carefully and conscientiously.] [9]

Verdict and judgment for plaintiff for $1,286. Defendant appealed.

*Errors assigned* among others were (1-9) above instructions, quoting them; (21) rulings on evidence, quoting the bill of exceptions.

*W. W. Watson*, of *Watson, Diehl & Kemmerer*, and *M. F. Elliot*, for appellant.—It was error to pass by important evidence, and leave the jury to find a verdict upon the general principles: Lackawanna, etc., R. R. v. Chenewith, 52 Pa. 382; Gregg Twp. v. Jamison, 55 Pa. 468; Fawcett v. Fawcett, 95 Pa. 376; Parker v. Donaldson, 6 W. & S. 132; Penna. Canal Co. v. Harris, 12 W. N. C. 432.

It is an established rule of law that in an action to recover damages, to leave it to the jury to assess such damages as the evidence would warrant, without any instructions as to the proper measure of damages, is error: Gilmore v. Hunt, 66 Pa. 321.

When a defendant is engaged in a lawful business, in order to sustain an action against him for any injury resulting therefrom, the injury must be shown to have been real and substantial; not a trifling annoyance or injury, such as is necessarily incident to the business complained of: Price v. Grantz, 118 Pa. 402; Huckenstine's App., 70 Pa. 102; Greenland v. Chaplin, 5 Exchequer Reps. 248; Buck Mountain Coal Co. v. Lehigh Coal & Navigation Co., 50 Pa. 99; Mechling v. Kittanning Bridge Co., 1 Grant, 419; Gold v. Philadelphia, 115 Pa. 184.

*I. H. Burns*, with him *O'Brien & Kelly* and *M. J. Donahoe*, for appellee.—It should be particularly borne in mind that defendant's business did not have to be conducted at this particular place, as in Penna. Coal Co. v. Sanderson, 113 Pa. 126, nor is it a matter of great interest to the general public, as in Robb v. Carnegie, 145 Pa. 345.

Defendant saw fit to locate its plant in a populous neighborhood, solely for its own convenience and profit. The results that have followed. might have been easily foreseen from the nature of the business and the character of the location and surroundings. Indeed, even had the defendant's plant been

remote from buildings and public roads when first established, yet if it became a nuisance by reason of the building up of the adjoining territory, then the objectionable business must move on: Wier's App., 74 Pa. 241; Rhodes v. Dunbar, 57 Pa. 275; Murphy v. Gas Co., 39 Pa. 257; Haugh's App., 102 Pa. 44; Meigs v. Lister, 23 N. J. Eq. 199; Walter v. Selfe, 4 DeG. & Sm. 315; Dennis v. Eckhardt, 3 Grant, 390; Evans v. Fertilizing Co., 160 Pa. 209.

OPINION BY MR. JUSTICE DEAN, July 21, 1896:

In the year 1888, and for years prior thereto, the plaintiff, Gavigan, was the owner of a house and lot on Penn avenue in the city of Scranton. At about that date, the defendant purchased lots and erected tanks and warehouse for the storage of carbon oil and gasoline on adjoining lots; the storage plant was about 240 feet from plaintiff's residence. The oil and other illuminants stored there were not refined on the premises, but elsewhere, and shipped to defendant in car tanks for storage and distribution to customers. The oil was piped from the car to the storage tanks, then drawn into barrels for delivery. The defendant had in the building an engine of twenty-five horse power, with boiler and stacks; the engine was used for forcing the oil from the car into the storage tanks; the boiler furnace was fired by anthracite coal. The plaintiff alleged that the odor from the oil and gasoline made the occupation of his house extremely uncomfortable, producing nausea; compelling him to close the windows in hot summer nights in order to secure sleep; preventing him from occupying a porch on one side of his house; and that his health was thereby injuriously affected. He further alleged that waste oil was permitted to percolate through the earth into the ditches and sewers, saturating the soil near the house, thereby aggravating his annoyance from the proximity of the oil tanks and storage warehouse. He therefore brought suit for damages. The defendant denied that any oil escaped, or that any odor proceeding from the plant was sufficient to injure health or even cause discomfort. At the trial there was much evidence on both sides, and much of it contradictory. The court submitted it to the jury, instructing them that if they found the operations of defendant affected the comfort and health of plaintiff, and

seriously interfered with the reasonable enjoyment of his dwelling, he was entitled to damages, otherwise not. There was a .verdict for plaintiff in the sum of $1,286, and defendant now appeals, assigning twenty-five errors.

The weight of appellant's complaint in these assignments of error go to a denial of plaintiff's right to recover at all. First, he argues that defendant was engaged in a lawful business, which it managed in a lawful way, therefore it is not answerable to others for damages trifling or annoying in their nature, and which are a necessary incident of the business. We concede this to be the law as announced in many opinions of this Court. The burden was on the plaintiff to show that his injury was real and substantial, and not a trifling annoyance, such as was an incident of a lawful business. On this point the evidence was quite contradictory; the plaintiff's tended to show that the oil from the tanks and oil house percolated the ground between them and plaintiff's house so profusely that it interrupted work on a new sewer the city was constructing, and further, by a number of witnesses, that the stench near the plaintiff's house was almost beyond endurance, and this because of the situation and proximity of plaintiff's property. On the other hand, defendant called witnesses whose evidence tended to show the odor was but trifling; some of them, employees of this and other oil plants, rather seemed to think, instead of being obnoxious, it was pleasant and beneficial. Whether it was a nuisance, and the damage therefrom real and substantial, the court could do no other than submit, on the evidence, to the jury. The defendant's plant was not a nuisance per se; whether it was a nuisance at all depended wholly on the proof; whether plaintiff's evidence established the fact could not be determined by the court. To establish that fact it was not necessary he should prove the business of defendant was carried on recklessly, or was not properly managed. It was sufficient to show that defendant selfishly carried on a lawful business in a populous neighborhood greatly to plaintiff's injury. It comes under that line of cases commencing with Pottstown Gas Co. v. Murphy, 39 Pa. 257, where it was held that the question was not one of negligence or no negligence, but of nuisance or no nuisance. The whole subject is so thoroughly discussed in the master's report, affirmed by this Court in Evans v. Fertilizing Co., 160

Pa. 209, that it would be a mere waste of time to review the cases.

Second, appellant alleges that plaintiff's injury was not distinguishable from that suffered in common by others in the same neighborhood. This was also a question, on the evidence, for the jury. We need cite no authority for the familiar proposition, that a public offense may, on the facts, be a private wrong. The defendant, if plaintiff's evidence be believed, permitted its oil or refuse to percolate the earth adjoining his residence, and to run into his cellar; the stench thereof so affected his comfort and health as to be intolerable; this injury, by reason of the relative situations of the oil tanks and dwelling, and the proximity of the latter to the former, was peculiar to the plaintiff. It is directly within the ruling in Dennis v. Eckhardt, 3 Grant, 390, where the maintenance of a shop by a tinsmith and sheet iron worker made it impossible for a nearby householder to enjoy his home without danger to his health. As to the objection that evidence was admitted of matters transpiring after the suit was brought, it is sufficient to say that it was not offered as a ground for recovery, but only to show the character of the nuisance, which was precisely the same then as for years before. Its effect was limited by the purpose of the offer, and the careful ruling of the court, which strictly confined it to the purpose.

Appellant further complains that the charge was inadequate on the measure of damages. The court said to the jury more than once that the plaintiff must have shown an actual substantial injury, either to the use of the property, to his health or physical comfort, and if they did not so find, their verdict should be for the defendant; but, if they should find for the plaintiff, then they should be careful in estimating the damages; that they could allow nothing for injury to the real estate, as such, for there was no testimony to warrant such allowance; that in considering injury to the reasonable use of the property, and the effect upon his health, and his actual physical discomfort, they must use their best judgment and soundest discretion in deciding what amount the plaintiff was entitled to, if anything. In a different class of cases, we have held more than once, that such meager instruction on the measure of damages is inadequate, but, owing to the peculiar nature of the injury here complained

of, we do not well see that the instruction could have been more specific. According to the testimony of plaintiff, often he had been made sick by the odors, and could not eat his meals, often, in the summer, he could not sleep, because of the offensive smells, and would close the windows, then he could not sleep because of the heat; then he would go to his work, and suffer all day because of a sleepless night and an insufficient breakfast, because of nausea; he and his family could not sit on the porch in the evening because of the offensive odor. It would be impossible to lay down any rule to guide the jury in their estimate of damages for such injury; they are like unto the damages which the law allows for the pain and suffering from personal injury caused by negligence; wholly within the sound discretion of the jury. With proper caution, the court thus left the matter to them, and their verdict does not indicate that they exceeded the limits of sound discretion.

There is nothing in the numerous assignments of error of sufficient merit to require further notice. All are overruled, and the judgment is affirmed.