# House of Refuge *v.* J. T. Dyer Company, Appellant.

*Nuisance—Quarry—Dynamite—Injuries to buildings—Disturbance of rest.*

A quarry company which blasts between 5.30 and 7 o'clock in the morning and uses dynamite in such excessive quantities and in such a manner as to produce violent vibrations and concussions to the injury of buildings and lands, will be restrained by injunction from so conducting its business, where it appears that the quarry is in a residential neighborhood, that most of the persons affected owned their property for a longer period than the existence of the quarry, and that the continuance of the improper quarrying would impair the value of property in the immediate neighborhood.

Argued Dec. 16, 1909. Appeal, No. 81, Oct. T., 1909, by defendants, from decree of C. P. Delaware Co., Dec. T., 1906, No. 175, on bill in equity, in case of House of Refuge *v.* John T. Dyer Company et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction. Before JOHNSON, P. J.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree awarding an injunction.

*William Taylor, O. B. Dickinson* and *L. N. Childs,* for appellants.—No legal injury arises from acts and operations which are confined to the land owned by a defendant and which are in the course and process wholly of a development of the natural products of the land: Penna. Coal Co. v. Sanderson, 113 Pa. 126.

No injunction should go out against the continuance of a business unless and until the fact of nuisance has first been established by an action at law: Bohan v. Port Jervis Gas Light Co., 122 N. Y. 18 (25 N. E. Repr. 246); New Castle v. Raney, 130 Pa. 546.

The court found as a fact that none of the complainants had sustained any damage except on two occasions in November, 1906. Because of such a damage it must be conceded equity would not interfere. The complaint, therefore, is confined to the annoyance from noise and concussions not accompanied with physical injury and which affect generally all persons within the circle of its reach, and such effects being common to all alike, although in varying degrees, no one or more persons could maintain a bill therefor: Sparhawk v. Railway Co., 54 Pa. 401.

A business will not be enjoined unless the results to others are real and substantial injuries: Price v. Grantz, 118 Pa. 402.

*George T. Butler,* with him *N. Dubois Miller,* for appellees.—That a bill in equity asking for an injunction to restrain interference with private property will lie, in such cases as the present, without a previous action at law, is settled beyond all dispute. See Walters v. McElroy, 151 Pa. 549; Booher v. Browning, 169 Pa. 18; Keppel v. Lehigh Coal & Nav. Co., 200 Pa. 649; Sullivan v. Steel Co., 208 Pa. 540.

Everything that disturbs in an unreasonable degree the quiet enjoyment of a home or dwelling house is a nuisance: Wallace v. Auer, 10 Phila. 356; Stokes v. R. R. Co., 214 Pa. 415; Sullivan v. Steel Co., 208 Pa. 540; Hauck v. Pipe Line Co., 153 Pa. 366; Payne v. McGranor, 49 Pitts. L. J. 96; Bennington v. Klein, 6 W. N. C. 281; Frazier v. Pennypack Trap Rock Co., 17 Montg. 105; Ladies' Decorative Art Club's App., 22 W. N. C. 75; Seligman v. Talking Machine Co., 63 Atl. Repr. 1093.

OPINION BY ORLADY, J., July 20, 1910:

The complainants, a number of property owners, filed this bill in equity against the defendant, an incorporated quarrying company, whose business is conducted in the immediate vicinity of their properties, in order to restrain it from blasting in its quarries before seven o'clock in the

morning; and to prevent such excessive blasting with dynamite as had produced certain violent vibrations and concussions that had jarred their grounds and injured their buildings, and had cast upon their premises and over a public highway a large quantity of stones, earth, etc. An answer was filed, and after a large amount of testimony had been taken by both parties, the court directed an injunction to issue in substantially the same form as prayed for.

The defendant owns and operates extensive quarries at Locksley for the manufacture and sale of crushed stone, which have been opened for about fifteen years, and have been owned by the defendant for about seven years. The operation represents an investment on the part of the defendant of about $140,000, and gives employment to 150 men. A public highway is located about 800 feet, and a railroad about 600 feet, from the face of the quarries. Nearly all the complainants owned their properties before the defendant purchased the quarries. The blasting is performed by the use of dynamite which it is customary to discharge in the mornings between the hours of 5:30 and 7 o'clock, and at noon between the hours of 12 and 1 o'clock. The most important findings of fact, which are fully sustained by the testimony, are as follows: the face of the quarry is thrown down by heavy charges of dynamite which is placed in deep holes that are drilled into the front of the rock and, when discharged, cause large blocks of rock to be detached and thrown into the bed of the quarry. These bowlders or masses of rock are then broken into smaller pieces by two methods so as to enable them to be placed readily in the heavy crushers, the first being a mud capping process, which consists of laying several sticks of dynamite on the top of a rock and covering them with mud and quarry dirt, having first attached to the dynamite a fuse about four feet in length. A large number of these charges are exploded at the same time by a number of men lighting the fuses as rapidly as possible so as to produce nearly a simultaneous discharge. The

second process is known as block holing, which is done
by drilling holes into the masses of detached rock and in
these pieces of dynamite, one to one and a half inches in
length, are inserted and exploded by fuses. The noise
and concussion produced by the mud capping is at least
ten times greater than that caused by the other method.
There is practically no difference between the two sys-
tems from the commercial view-point either in cost or
effectiveness, except that the mud capping requires less
time but produces more noise and concussion; while by
the block holing there is greater danger from flying spalls,
because of concealed fissures in the rock. The vibra-
tions and concussions of the air caused by the mud cap-
ping were so extensive at these quarries that buildings
on adjoining and nearby properties were visibly shaken;
windows were broken; electric wiring and connections were
disturbed; plastering in the houses was shattered and the
walls cracked; the roofing on some of the houses was
damaged; and the market value of some of the properties
was impaired; the rest and peace of residents in the near
neighborhood was disturbed from 5:30 to 7 o'clock A. M.,
on account of the noise and vibration; and stones were
thrown by the blasts onto the public highway 800 feet
distant. The complainants' ninth request for findings of
fact with the answers thereto are as follows: "The man-
ner in which the defendant operates its quarry at Locksley
is unreasonable, negligent and reckless, in that the blasts
are unnecessarily loud and severe." *Answer:* "Not found
as to general operation of the quarry, but found as re-
quested at certain times when mud blasts were set off."
It was urged by the complainants that the defendant has
gradually become more reckless and the blasts more
violent as shown by this finding. The defendant con-
tends that its system of blasting is the one best adapted to
its purposes and is generally in use in such industries,
and the methods were the most practical because they
were the most efficacious; and urged that to enjoin the
present methods would seriously interfere with the com-

mercial success of the business. The answer to this is found in the findings of fact by the court and after a thorough examination of the whole record we find abundant authority for the conclusion reached. Whether the business as conducted by the defendant was a nuisance at all depended wholly upon the proof: Gavigan v. Refining Co., 186 Pa. 604. While it is conceded that the business is prima facie a lawful one and is not necessarily attended with dangerous results, before it can be enjoined it must be shown by affirmative proof to be conducted in such a careless manner as to become a nuisance. The character of the business, the manner in which it is conducted, its location and relation to other property are all to be considered in determining the question as to whether it is a nuisance or not a nuisance: Evans v. Fertilizing Co., 160 Pa. 209; Kiser v. Kerbaugh, 40 Pa. Superior Ct. 163.

From the record it is apparent that the extreme blasts of dynamite, of which complaint has been made, are either the result of recklessness in the use of a dangerous explosive, or that the defendant uses such heavy charges merely for its financial benefit. In either light it is an unwarranted act and should be restrained. The argument of the appellant and the authorities it relies upon are so fully and conclusively disposed of in Sullivan v. Steel Co., 208 Pa. 540, and 222 Pa. 72, that it is not necessary to repeat them here.

It is not suggested that the defendant should abandon its quarry, but the law requires that it shall conduct its business in such a manner as not to endanger life, disturb the peace of residents and depreciate the market value of private property in its immediate neighborhood. Many of these complainants were first on the ground, their properties were developed and improved in this attractive, suburban location, which is rapidly becoming residential in character. The House of Refuge, which adjoins the defendant's property, is an important public institution with more than seven hundred inmates. While

this quarry has been in active operation, for a number of years another one of like character in the immediate neighborhood has been so operated as not to cause such results as are complained of in this case.

The facts found and admitted make out a proper case for regulation by the courts of the manner in which even this lawful business shall be conducted. If this severe blasting, which affects so large an area of country, is not restrained, it will naturally and inevitably result in the lowering of values in this suburban settlement to the standard of a mere quarry district. The defendant admits that the blasts from 5:30 to 7 A. M. are made as a pure matter of financial advantage, and such alarming detonations at 5:30 A. M., during the hours devoted to rest, must have a higher warrant for their continuance than the mere commercial advantage of an individual operator.

The decree entered is a reasonable one under all the facts of the case, and it is affirmed.