200 So.2d 220 (1967)
NITRAM CHEMICALS, INC., a Corporation, Appellant,
v.
H.E. PARKER and Lorraine Parker, Clarrey Stanford and Ruby Stanford, Julian Torre and Virginia Torre, Joseph B. Garrison, Jr., and Sandra P. Garrison, Isaac F. Stanley and Vada Stanley, Calvin C. Peterson and Velma C. Peterson, Paul A. Messina and Nancy Messina, Robert E. Sanchez and Evelyn Sanchez, Appellees.
Nos. 7148-7151, 7154, 7155, 7146, 7147, 7144, 7145, 7140-7143, 7152, 7153.
District Court of Appeal of Florida. Second District.
June 7, 1967.
Rehearings Denied July 13, 1967.
*221 William Reece Smith, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellant.
John R. Parkhill, James M. McEwen, of Gibbons, Tucker, McEwen, Smith & Cofer, Tampa, for appellees.
ALLEN, Chief Judge.
Nitram Chemicals, Inc., defendant below, takes a consolidated appeal from final judgments entered upon eight separate verdicts. The verdicts found Nitram guilty of maintaining a temporary nuisance continuing at the time of trial and awarded the plaintiffs, appellees here, the following respective amounts:

 H.E. Parker and Lorraine
 Parker $10,500
 Clarrey Stanford and Ruby
 Stanford 4,500
 Julian Torre and Virginia Torre 7,500
 Joseph B. Garrison, Jr., and
 Sandra P. Garrison 5,000
 Isaac F. Stanley and Vada Stanley 4,000
 Calvin C. Peterson and Velma
 C. Peterson 3,000
 Paul A. Messina and Nancy
 Messina 8,000
 Robert E. Sanchez and Evelyn
 Sanchez 1,100

Appellant has stated three points in its brief. Point I and Point III both relate to temporary nuisances and we shall discuss these two points together.
Point II relates to appellant's claim that the lower court failed to substantially and correctly charge the jury on the law applicable to a nuisance.
Points I and III are as follows:
I. The jury verdict of a temporary nuisance continuing at the time of trial is contrary to the manifest weight of the evidence.
III. The Trial Court erred in denying defendant's motions for directed verdict, for judgment in accordance with motion for directed verdict, and for new trial because there was no evidence from which the jury could properly assess damages *222 for a temporary nuisance and because the jury was not charged as to the proper measure of damages for a temporary nuisance.
Point II is stated to be:
The Trial Court erred in failing to substantially and correctly charge the jury on the law applicable to the issue of whether defendant's plant constituted a nuisance.
The appellant, in its reply to the brief of the appellees, has broken its statement of points down into four points, as follows:
Point I: The jury verdict of a temporary nuisance continuing at the time of trial is contrary to the manifest weight of the evidence.
Point II: The trial court erred in failing to substantially and correctly charge the jury on the law applicable to the issue of whether defendant's plant constituted a nuisance.
Point III: The trial court erred in denying defendant's motions for directed verdict, for judgment in accordance with motion for directed verdict, and for new trial because there was no evidence from which the jury could properly assess damages for temporary nuisance.
Point IV: The trial court erred in denying defendant's motions for directed verdict, for judgment in accordance with motion for directed verdict, and for new trial because the jury was not charged as to the proper measure of damages for a temporary nuisance.
It will be observed that Points I, III and IV relate to temporary nuisances, similar to Points I and III of the original brief of appellant, while Point II of the reply brief relates to charges applicable to a nuisance, the same as Point II of appellant's original brief. In discussing the points in this opinion, we shall use the points set out in appellant's original brief.
The facts upon which this case arose are set out below.
The appellant, Nitram, produces ammonium nitrate for use in fertilizer. The plant, built in December of 1963, is located outside the Tampa city limits close to appellees' property. From the time the plant was built, appellees complained of a variety of irritating noises, dust and fumes which arose out of the operation of the plant. Appellees' evidence charged that the noises, dust and fumes restricted the appellees in the use of their property and impaired their physical and mental well being.
Complaints to Nitram and to local health officials would ease the problems for a short time, after which the fumes and noises would begin again and to the same extent as prior to the complaints.
The complaints did not stop the cause of appellees' troubles and the case went to trial. Testimony by appellees revealed the existence of sirens, clanging, humming noises, as well as irritating dust and odors. These conditions caused the appellees to have to keep the windows closed, even in the summer, to stay inside, to sleep in a room not facing the plant, and caused some of them or their families to go for treatment of physical ailments.
Appellant's evidence was to the effect that new equipment had been installed to reduce these problems and that Nitram had done all it could at the time of trial to abate the conditions. Appellees testified, however, that the noises and the odors continued immediately before, as well as during, the trial.
Verdicts and judgments favored the plaintiff-appellees and Nitram appealed.
The first point on appeal, whether the verdict is against the manifest weight of the evidence, will compel us to fill in the above sketchy outline of the facts.
Appellant contends, in essence, that the jury could not find the existence of a temporary nuisance continuing to the time of *223 trial. Appellant argues that noise, dust and ammonia fumes, which emanated from its plant during the early months of operation, had been entirely eliminated, except for unforeseeable instances, or arose out of a reasonable use of its property. Appellant goes on to assert that the jury could have found either that a nuisance existed but was abated at the time of trial or that the nuisance was permanent. The manifest weight of the evidence, it contends, was against a finding of temporary nuisance continuing to the time of trial. It is apparent from the above that our problem is not whether a nuisance existed, but whether a temporary nuisance existed to the date of trial and which the jury found to exist, and also the proper elements of damages.
Appellees presented the following evidence to demonstrate that the nuisance was continuing at the time of trial:
Mrs. Garrison, appellee, testified that on Saturday, before trial, she saw yellow smoke, which smelled like ammonia, in her backyard. It came from the Nitram smoke stack. She stated that the ammonia often caused a burning sensation on her skin, bothered her children and often restricted adults to the confines of the house. She said she hears a grinding or a humming noise when the plant is operating.
Mr. Stanley testified to the noise and fumes and stated: "I have seen the fumes so bad that we couldn't even step outside of the house, that it would come down like a light rain and get on you, and you have a kind of a burning sensation on your skin." He stated that the improvement in these conditions now as compared to when the plant first began operating was small. He testified that he no longer hears the siren noise, but that the problems have caused differences between him and his wife. He stated he had to buy air conditioning to eliminate the odor inside the house but he still hears the noise. Mrs. Stanley substantially confirmed her husband's testimony and added that the ammonia odor makes her ill.
Mrs. Peterson testified that the noise and the odors were particularly bad during December of 1965 and January of 1966, and that before the plant was built she had no problem with these conditions. She commented that she and her child are allergic to ammonia, that she keeps her windows closed constantly, that the children cannot sleep in the bedroom which faces the plant, that the noise makes her nervous, and that she has had to be treated by a doctor.
Ruby Stanford testified that the most recent time she experienced the odor was the Saturday before trial. She stated she still hears the trains banging and noises which she described as roaring and grinding. She stated that Charlotte, her daughter, cannot use her bedroom, which faces the operational plant, and that she has been under the care of a physician. Dr. Benet testified concerning the adverse effect the ammonia fumes had on her daughter.
Appellees' witness, a Mrs. Chavez, who lives beyond the Messinas, stated that the most recent incident occurred the day before the trial began. She testified as to other incidents occurring on December 24 and 25, 1965. She related that the fumes and the smoke which came from the plant caused her nostrils to burn and her eyes to tear.
Witness Lennard complained of a clanging and banging sound coming from the plant at night and as recent as a week before trial.
Witness Mrs. Ball, who lives near Mrs. Chavez, testified that the ammonia odor has been present ever since Nitram began operating and that she heard the plant noises about a week and a half before the trial.
Witness Mrs. Futch, who lives near the Petersons, complained of the bad odor on the weekend before the trial. She stated that she cannot stay in her yard when the odor exists  she must go into her house or leave the area.
A witness, Mr. Calhoun, who also lives near the Petersons, heard, two nights before *224 the trial, the sound of steam escaping as well as a loud roaring sound.
Appellee Julian Torre testified that on the night of January 25, 1966, a lot of smoke and a funny smell came from the plant. He explained that these conditions are driving his wife into a constant nervous condition and that he stays mad about the plant's operations. Mrs. Torre substantially confirmed her husband's remarks. Dr. Fernandez, by deposition, told about the adverse effects of the plant on the Torre family.
Appellee, Mr. Parker, took the stand and said that during the course of trial when these conditions occurred, he made a check of all nearby plants. He found no fault with the other plants and specifically charged the trouble to Nitram. The Sanchezes and Messinas also testified in regard to the nuisance and damages.
Mr. and Mrs. Garrison took movies of the adverse situation on January 9, 1966, which showed the smoke.
Although Nitram presented evidence that the nuisance had been abated, the appellees' testimony was clearly in conflict therewith and was sufficient to support the verdict.
The second question under appellant's Point I is whether the jury could return a verdict of temporary nuisance.
Appellant points to the testimony of Mr. DeWitt, general manager of appellant's plant, which showed that everything possible had been done:
"[By plaintiffs' attorney]
"Q. And you have done everything now then, that you could do to reduce or eliminate noises from the Plant haven't you? There is nothing more that you can do?
"A. We have followed the outline of reduction of noises set out by the consultant, yes, sir.
"Q. So there is nothing more that you know of to be done, is there, about the noise?
"A. Nothing more that I know of at this time.
"Q. You have done everything the consultant told you to do, haven't you?
"A. We have done everything that he has told us to.
"Q. But, as far as what you know now about fumes and odors, you don't know of anything else to do, do you, that you haven't done?
"A. No, not to my personal knowledge. I think it's pretty well covered."
Mr. DeWitt's complete testimony showed that new devices, which are not now known to exist, could be developed in the future to abate the conditions which now exist.
"Q. You have done everything the consultant told you to do, haven't you?
"A. We have done everything that he has told us to.
"Q. Now, is that also true with reference to fumes, or odors that may emanate from the plant?
"A. I wouldn't say, Mr Parkhill, that you are ever completely through, because from time to time new devices and other items are manufactured that might be available in the future that we know nothing of now. The same way with noise."
Manager DeWitt also testified that when the plant malfunctions occasionally, ammonia odors, dust and steam vapor come from it.
The jury was confronted with the permanency of these problems and resolved, in effect, by their verdict that they could be further abated in the future.
The question of the reasonableness of the use of appellant's property was *225 properly submitted to the jury for determination. Lee v. Florida Public Utilities Co., Fla.App. 1962, 145 So.2d 299, 4 A.L.R. 3d 896.
Whether the verdict is against the manifest weight of the evidence is a question initially for the consideration of the trial judge arising in a motion for new trial. Cloud v. Fallis, Fla. 1959, 110 So.2d 669. A motion for new trial is directed to the sound discretion of the trial judge and his disposition of the motion cannot be overturned without a showing of abuse. Cloud v. Fallis, supra. The question is directed initially to the trial judge because he is in the best position, having heard the evidence and seen the witnesses, to understand the process of development of the jury's verdict. The trial court did not abuse its discretion in finding that the verdict of a temporary nuisance, continuing to the time of trial, was not against the manifest weight of the evidence.
Moving on to Point III, we find the court did not err, except in the cases of the Parkers and the Sanchezes, in failing to instruct the jury on loss of rental value as a measure of damages.
We are here concerned with the proper measure of damages for temporary nuisance continuing to the date of trial. Loss of use value or loss of rental value is a measure of damages recoverable for a temporary nuisance to the property itself.
In addition to the damages resulting from the depreciation, rental or use value of the property, the plaintiff may recover such special or incidental damages as he may be able to prove, i.e., annoyances, discomfort, inconveniences, or sickness. This is true whether the injury is permanent or temporary and can readily be seen from the hereinafter cited cases and text books. McCormick, Damages 504 (1935); Oleck, Damages to Persons and Property § 214 (1961); 66 C.J.S. Nuisances § 175 (1950).
Dean Prosser gives an excellent review of the damages recoverable in nuisance. He stated in Prosser, Torts § 91 (3rd ed. 1964):
"As in the case of any other tort, the plaintiff may recover his damages in an action at law. In such an action the principal elements of damages are the value attached to the use or enjoyment of which he has been deprived, or  which often amounts to a measure of the same thing  the loss of the rental or use value of the property for the duration of a temporary nuisance, or the permanent diminution in value from a permanent nuisance, or specific losses such as crops, or the income from an established business; and in addition the value of any personal discomfort or inconvenience which the plaintiff has suffered, or of any injury to health or other personal injury sustained by the plaintiff, or by members of his family so far as they affect his own enjoyment of the premises, as well as any reasonable expenses which he has incurred on account of the nuisance. Where the action is one for damages, the comparative hardship upon the parties is immaterial once the existence of the nuisance itself has been established." (Emphasis added.)
The Kentucky Court of Appeals, in City of Madisonville v. Nisbit, 239 Ky. 366, 39 S.W.2d 690 (1931), in its opinion, said:
"* * * It is argued that the true measure of damages was the impairment of the market value of the property. The rule upon that subject is settled by many decisions. If the nuisance is permanent, the measure of damages is the depreciation in the market value of the property. If the nuisance is temporary, and capable of correction at reasonable cost, the measure of damages where the property is occupied by the owner is the diminution in the value of its use during the continuance of nuisance. *226 If the property is not occupied by the owner, the measure of compensation is the depreciation in the rental value during the continuation of the wrong. [Citations omitted.]
"The city pleaded that the situation creating the nuisance was temporary, and that steps to correct it had been taken. The instructions permitted recovery only for temporary impairment of the value of the use of the property while used and occupied by plaintiff, and for impairment of its rental value when not occupied by the owner. It appeared that plaintiff had occupied the property part of the time, and had rented it a portion of the period involved, and the showing of such facts made it necessary to frame the instructions to fit each hypothesis developed by the evidence. The city complains that the award of damages was excessive, but there is no merit in the complaint. The evidence warranted the verdict, and the amount allowed accords substantially with the preponderance of the evidence."
In another Kentucky case, Cumberland Torpedo Co. v. Gaines, 201 Ky. 88, 255 S.W. 1046, p. 1048 (1923), the Court stated:
"* * * It is the settled rule in this state that the measure of damages for a temporary nuisance, that is, one that may be readily abated at a small expense, is the diminution in the rental value of the property, if rented or held for renting, during the continuance of the nuisance, but if occupied by the owner, it is the diminution in the value of the use of the property during the same period of time. On the other hand, if the nuisance be permanent, that is, one that cannot be readily abated at a small expense, the measure of damages is the diminution in the market value of the property. Where there is no conflict in the evidence, the court should decide whether the nuisance is temporary or permanent and give only the measure of damages applicable to the state of case so found; but, if the evidence is conflicting, the question should be submitted to the jury with appropriate instructions giving the measure of damages applicable to both kinds of a nuisance, and requiring the jury to state the character of its finding. As the court's instructions did not comply with these requirements, it follows that they were erroneous."
Our Florida Supreme Court, in Ford v. Dania Lumber & Supply Co., 1942, 150 Fla. 435, 7 So.2d 594, in a case where the plaintiff sued to recover damages charging defendant maintained a private nuisance, said:
"Passing now to the second question, it appears that the nuisance is remedial. It may be abated and in that event the damage would cease. For that reason the plaintiff's recovery should be limited to the loss of the use value of his property during the period of the nuisance. 39 Am.Jur. (Nuisance) Section 130 et seq.; 46 C.J. 828."
In City of Lakeland v. Douglas, 1940, 143 Fla. 771, 197 So. 467, Douglas brought a suit against the City of Lakeland for damages occasioned by the operation of sewage disposal plant or garbage plant of the municipality.
In discussing damages, the Supreme Court said:
"The plaintiff in error contends that the proper measure of damage in this case should be determined by the ascertainment of the difference between the rental value of the property which plaintiff occupied as his home as it existed prior to the occurrence of the wrongful acts complained of and that value as it existed after results of the wrongful acts came into existence. There may be cases in which that would be a proper rule by which to measure damages, but not so here. In this case, as stated, supra, the damage is not that which accrued to the property as such, *227 but it is that damage which the plaintiff has suffered in the use and enjoyment of his property by reason of the wrongful acts of the defendant.
"For the reasons stated, the judgment is affirmed."
In A. & P. Food Stores, Inc. v. Kornstein, Fla.App., 121 So.2d 701, the Third District Court of Appeal held, in a case where plaintiffs complained of excessive noises created by air conditioning units adjacent to their property; and from the deliveries of foodstuffs to and collection of garbage from defendant's store during early morning hours; and that offensive odors resulted from decayed vegetable and other deleterious matters lying about or on the defendant's property, that the plaintiffs would have been entitled to the loss of the use value of their property during the period of the nuisance.
On a Petition for Clarification the Court stated:
"As indicated by the decision the cause was remanded to permit the establishment of damages, if any, for loss of use or depreciated rental value of appellees' property. It was this court's intention that upon remand additional evidence could be offered by appellees only as to loss of use or depreciated rental value."
In Millett v. Minnesota Crushed Stone Co., 1920, 145 Minn. 475, 177 N.W. 641, the Supreme Court of Minnesota said:
"As to the first proposition: A property owner whose property is injured by a nuisance may recover for the property damage sustained. This is generally the diminished rental value, if the property be rented, or the diminished value of the use, if the property be used by the owner. [Citations omitted.]
"* * *
"It is well settled that in an action for damages for maintaining a nuisance recovery may be had for inconvenience, physical discomfort, and illness to the occupant of the property resulting from the nuisance. Pierce v. Wagner, 29 Minn. 355, 13 N.W. 170; 3 Sedgwick, Damages, § 948.
"This element of damages is something additional to the element of diminished rental value. [Citations omitted.]
"We think, too, it is something additional to diminished value of the use, as that term is ordinarily understood. The value of the use is the value not to particular persons, who may be of peculiar susceptibility to injury, or who may be subject to peculiar conditions or situations, but its general value to ordinary persons for the legitimate uses to which it may be adapted, including in this case use as a homestead. * * *"
In Spaulding v. Cameron, 1954, 127 Cal. App.2d 698, 274 P.2d 177, the court held that damages for discomfort, annoyance and mental distress suffered by an occupant of property are recoverable in an action for damages for nuisance, but are not the exclusive basis of compensation. It also held that a landowner whose residential property was damaged by dirt washing from another's land could recover damages for loss of rental value of the property, even though she lived in the premises during the period in question.
66 C.J.S. Nuisances § 175, lays down the general rule:
"Where the injury to real estate resulting from a nuisance is permanent, the measure of damages is the depreciation in its value, but, where the injury is remediable, the measure of damages is the depreciation of the rental or usable value of the property during the continuance of the injury."
In City of Murfreesboro v. Haynes, 18 Tenn. App. 653, 82 S.W.2d 236 (1935), a suit was brought against the city for damages for the pollution of a river by the commission of a nuisance consisting of the disposal *228 of sewage into the river. The court said that for a temporary or recurring nuisance, damages could be recovered from time to time for impairment of the use and enjoyment of the property; that the measure of such damages would be the injury to the value of the use and enjoyment, which could be measured to a large extent by the rental value of the property, and the extent to which the rental value was diminished; and that the difference in the market value of the property could not be considered, such difference being open to consideration only in ascertaining damages for injuries from a permanent nuisance.
In Gavigan v. Atlantic Refining Co., 186 Pa. 604, 40 A. 834 (1898), the Supreme Court of Pennsylvania, in a nuisance case, said:
"Appellant further complains that the charge was inadequate on the measure of damages. The court said to the jury more than once that the plaintiff must have shown an actual substantial injury, either to the use of the property, or to his health or physical comfort, and, if they did not so find, their verdict should be for the defendant; but, if they should find for the plaintiff, then they should be careful in estimating the damages; that they could allow nothing for injury to the real estate, as such, for there was no testimony to warrant such allowance; that in considering injury to the reasonable use of the property, and the effect upon his health, and his actual physical discomfort, they must use their best judgment and soundest discretion in deciding what amount the plaintiff was entitled to, if anything. In a different class of cases we have held more than once that such a meager instruction on the measure of damages is inadequate, but, owing to the peculiar nature of the injury here complained of, we do not well see that the instruction could have been more specific. According to the testimony of plaintiff, often he had been made sick by the odors, and could not eat his meals; often, in the summer, he could not sleep because of the offensive smells, and would close the windows; then he could not sleep because of the heat; then he would go to his work, and suffer all day because of a sleepless night and an insufficient breakfast because of nausea; he and his family could not sit on the porch in the evening, because of the offensive odor. It would be impossible to lay down any rule to guide the jury in their estimate of damages for such injury. They are like unto the damages which the law allows for the pain and suffering from personal injury caused by negligence,  wholly within the sound discretion of the jury. With proper caution, the court thus left the matter to them, and their verdict does not indicate that they exceeded the limits of sound discretion. There is nothing in the numerous assignments of error of sufficient merit to require further notice. All are overruled, and the judgment is affirmed." (Emphasis supplied.)
In Tuebner v. California-Street R. Co., 66 Cal. 171, 4 P. 1162 (1884), the court held that the measure of damages for injury by a nuisance is a question for the jury, and they may determine a reasonable sum as a proper compensation; it is not necessary for the plaintiff to prove the value of his injury.
In its opinion, the court said: (p. 1165)
"* * * The fact that the defendant had since the commencement of the suit (if such be the fact) remedied the evil complained of, would not interfere with plaintiffs' right to recover damages for injuries sustained before the commencement of the suit. It was not incumbent on the plaintiffs to prove their injury by value; it may have been of trivial cost to sweep up a pailful of soot, and yet the soot may have caused serious injury; it may also have been quite out of the question to prove the loss in value sustained by the jarring. It was for the *229 jury to determine a reasonable sum to be proper compensation."
In Hockaday v. Wortham, 22 Tex.Civ. App. 419, 54 S.W. 1094, 1095, the court, in its opinion, said:
"The third proposition under this assignment reads: `Plaintiff is not entitled to recover damages for being deprived of the enjoyment of his home.' We answer this with the following quotation from Wood, Nuis. p. 1001, § 866: `In the case of an action for an injury to the comfortable enjoyment of property by a person in possession, no precise rule for ascertaining the damage can be given, as, in the very nature of things, the subject-matter affected is not susceptible of exact measurement. Therefore the jury are left to say what, in their judgment, the plaintiff ought to have in money, and what the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the nuisance; and whether the verdict is large or small, if, in view of the evidence, it has any reasonable foundation, it will not be disturbed because it is too small on the one hand or too large on the other.'"
In Berger v. Minneapolis Gaslight Co., 60 Minn. 296, 62 N.W. 336 (1895), the Supreme Court of Minnesota held that in a case of a nuisance created upon premises occupied by plaintiffs, as their homes, by the defendant, the damages are not limited to the diminution of the rental value of the premises during the continuance of the nuisance, but they may recover damages for any actual inconvenience and physical discomfort which materially impaired the comfortable and healthful enjoyment and occupancy of their homes, and for any actual injury to their health or property caused directly by the nuisance, without fault on their part.
In its opinion, the Court said: (p. 338)
"The exceptions of the defendant to the instructions of the court as to the measure of damages are not well taken, for the instructions were not only legally correct, but so clearly stated and carefully limited that they must have been understood and correctly applied by the jury to the particular case of each plaintiff. Whatever the rule of damages may be, where an owner does not occupy, but leases, his premises, which are injured by a nuisance, the diminution in the rental value during the continuance of the nuisance is not the full measure of the damages in these cases, where the plaintiffs occupy their houses, which are on rented ground, as their homes. They are entitled to be compensated, by way of damages, for any actual inconvenience and physical discomfort which materially interfered with and impaired the comfortable and healthful enjoyment and occupancy of their homes, and for any actual injury to their health or property caused directly by the nuisance, without neglect on their part. Pierce v. Wagner, 29 Minn. 355, 13 N.W. 170; 3 Sedg. Dam. § 948. The damages awarded by the jury were liberal, but not so excessive as to justify us in interfering with the verdicts."
In Judson v. Los Angeles Suburban Gas Co., 157 Cal. 168, 106 P. 581, 26 L.R.A., N.S., 183 (1910), (which case is referred to in appellees' brief as Russell v. Ross  the error being caused by taking the name of case on the top of page 583, the same page the following quotation is on, and the page the case, Russell v. Ross begins; naturally the reply brief of appellant follows into the same error) the Supreme Court of California said: (p. 583)
"The fact that respondent proved no damage to the dwelling house or herbage on his land nor to the rental, or vendible value of the property, does not prevent the court from awarding damages. In the very nature of things the amount of detriment sustained is not susceptible of exact pecuniary computation. It is for the court to say what sum of money the plaintiff should receive in view of the *230 discomfort or annoyance to which he has been subjected. Wood on Nuisances, §§ 563, 866; Tuebner v. Cal. St. Ry. Co., 66 Cal. [171,] 175, 4 Pac. 1162; Gavigan v. Atlantic, etc., Co., 186 Pa. 604, 40 Atl. 834; Berger v. Minneapolis, etc., Co., 60 Minn. 296, 62 N.W. 336; Hockaday v. Wortham, 22 Tex.Civ.App. 419, 54 S.W. 1094."
Since the measure of the damage is the loss of use or the loss of rentals, it is not error for failing to instruct on loss of rental value where plaintiffs own and live on the property subjected to the nuisance. It does seem, however, that loss of rental value is the proper measure of damage when applied to a plaintiff owner who does not live on his property but leases it to another party. This theory would forbid the tenant to recover for loss of use, and justly so, because "if the tenant after getting the land at a reduced rent is allowed to recover against the wrongdoer for the injury to the usable value, he will be unjustly enriched." McCormick Damages § 128 at 518 (1935).
Appellees Parkers and Sanchezes were landlords at the time of trial. Their properties, which were disturbed by the nuisance, were rented to other persons. The Parkers' rental property, which is directly across the street from their own home, was rented during the period of the nuisance. The Sanchezes lived on their property during part of the time of Nitram's operation, but moved out a year before the trial. It would appear, since the Parkers rented their property across the street for the period in question, loss of rental value is a proper measure of damage for this property.
Loss of rental value is also the proper measure as applied to the Sanchezes' property during the year they owned, but did not live in, their house located near Nitram.
The Parkers had loss or diminution of use value for the home in which they lived and possible rent diminution in the rented house. The jury may have combined these two values into one jury verdict. There is no evidence in the record showing this.
The question of whether the trial court erred in denying defendant's motions for directed verdict, for judgment in accordance with motion for directed verdict, and for new trial because there was no evidence from which the jury could properly assess damages for temporary nuisance is raised under Point III.
We agree that there had to be evidence of loss of rental value, but only in regard to the rental properties of the Sanchezes and the Parkers. In application to the Sanchezes, evidence of loss of rental value would only be necessary for the year in which their property, subjected to the nuisance, was rented. The Parkers must present evidence of loss of rental value pertaining to their property across the street from their home.
The verdicts and judgments in favor of the Sanchezes and the Parkers must be reversed and a new trial ordered for them on the question of damages only. See: 2 Fla.Jur., Appeals § 375 (1963).
Appellant's Point II is: The trial court erred in failing to substantially and correctly charge the jury on the law applicable to the issue of whether defendant's plant constituted a nuisance.
The following paragraphs are reproduced from the total charges of the trial judge in this case and we believe that the charges reflect a fair presentation to the jury of what constitutes a nuisance.
"Now, Gentlemen, this is a case  or rather, a group of cases alleging the existence of a private nuisance. A private nuisance is one that violates only private rights and produces damages to but one or more persons rather than to the public generally. This is not an allegation of public nuisance which, as a result, affects the public at large, or such of the *231 public generally as comes into contact with the nuisance.
"I instruct you that the filing of a lawsuit and allegations of damages does not, of itself, prove or establish the liability of the persons sued. All of the facts and the circumstances must be shown before any decision can be reached as to liability for damages. In these cases, plaintiffs have brought suit seeking compensation by way of money damages for injuries either to themselves or their property they have suffered, they allege, because of a nuisance operated by the Defendant.
"A nuisance can best be defined as an unreasonable interference with the use and enjoyment of land. The existence or non-existence of a nuisance generally turns on the factual question whether the use to which that property is put is a reasonable use under the existing circumstances. Now, in determining whether or not a thing or a business activity is a nuisance, the location and surroundings are of importance and are to be considered along with the other circumstances in the case. What is a nuisance in one locality may not be a nuisance in another. It is a maxim of law that one should use his property so as not to annoy, inconvenience or injure another, but not every such use is a nuisance. A property owner may put his own property to any reasonable and lawful use so long as he does not, thereby, deprive the adjoining landowner of any right of enjoyment of his property, which is recognized and protected by law, and so long as his own use is not such a one as the law will pronounce a nuisance.
"The test to be applied in determining whether a particular annoyance or inconvenience is of a stature to constitute a nuisance is the effect of the conditions upon an ordinarily reasonable man with a reasonable disposition in ordinary health and possessing the average and normal sensibilities. In general, the law does not afford protection to the hypersensitive.
"Now, a nuisance may be either permanent or temporary. A permanent nuisance may be defined as one which could not be abated within any definite time in the future. A temporary nuisance is one which has been or can be abated. Ordinarily, a person or corporation who causes a nuisance, as hereinbefore defined, is liable for the resulting injury to others, regardless of the degree of care or skill exercised to avoid that injury. Furthermore, the motive with which an act is done is immaterial in determining whether the act constitutes a nuisance; thus, if an act done or structure erected by the Defendant on its own land is a nuisance, the Defendant is liable for the nuisance without regard to its intent."
We conclude that the above charges fairly reflect the law as to a nuisance and that the jury was not prejudiced against the appellant by these charges.
Affirmed as to all of the appellees, except the Parkers and the Sanchezes. Reversed for new trial on damages only as to appellees Parkers and Sanchezes.
HOBSON, J., and HENSLEY, ROBERT E., Associate Judge, concur.