JACOB BROCK, APPELLANT, vs. ALVIN D. GALE, APPELLEE.

1. The Legislature appointed a term of the Circuit Court to be held on the the same day in two counties in the same circuit; *Held*, that a term might be held in either county on the day designated.

2. In a suit against a carrier of passengers upon a steamboat for the loss of baggage, the plaintiff claimed for the loss of a set of dentist's instruments and special damages in the loss of the profits and earnings which he might have made if the instruments had not been lost. *Held*, upon demurrer, that such special damages could not be recovered, but only such damages as were contemplated or might reasonably be supposed to have entered into the contemplation of the parties to the contract of carriage.

3. It is a question for the jury to determine what articles of property as to quantity, quality and value contained in a passenger's trunk or valise, may be deemed baggage, (subject to the power of the court to correct any abuse;) and it is improper for the judge to designate by name what articles may be included in the term *baggage* of a traveler.

4. The goods contained in the trunk, &c., of an ordinary passenger, traveling upon a steamboat, are not the goods of a "shipper" of freight or baggage within the meaning of the 69th section of an act of Con-

gress, entitled " an act to provide for the better security of life," &c., approved February 28, 1871.

This is an appeal from the judgment of the Circuit Court for Duval county.

Gale, plaintiff, sued Brock, defendant, to recover the value of a valise and its contents as the baggage of plaintiff, who was a traveling dentist who took passage on defendant's steamer Darlington, on the St. John's river, the valise having been lost on or before the arrival of the boat at its wharf in Jacksonville. The valise, as alleged, contained a set of dentist's instruments of more than ordinary value, ornamented with gold and jewels, and some articles of clothing.

The first count of the declaration was a special allegation that plaintiff paid his fare as a passenger on defendant's steamboat and delivered his valise and contents to defendant's servants on the boat, notifying them that it was very valuable, (annexed was a schedule of the property valued at $555.18,) and alleged its non-delivery at the place of destination.

The second count alleged that the dental instruments were necessary to the pursuit of his business as a dentist and were a part and parcel of his necessary baggage and effects as a traveling dentist, and that the loss thereof had subjected him to great loss and damage, in the inability of the plaintiffe to pursue his profession, to-wit, for six months, and thereby to make a livelihood and support, to his damage $1000.

Third count, for goods sold and delivered.

Fourth count, on account stated.

The defendant pleaded that he was not indebted as alleged ; that he did not promise as alleged ; that the goods were not delivered into his custody ; that the goods were of little value ; and that the dental instruments were not " baggage ;" and defendant demurred to the second count on the ground that the damages alleged were too remote, that the plaintiff can recover if at all only the value of the property,

and not the alleged consequential damages for loss of time and business.

The demurrer was argued and overruled by the court, to which defendant excepted.

Trial upon the issues joined and verdict for plaintiff for $764.39.

Motion for new trial by defendant denied, and judgment entered upon the verdict.

*Fleming & Daniel* for Appellant.

The first error assigned is that the court erred in denying application for a continuance.

This motion was made on the ground that the Legislature, in declaring by the act of February 19, 1873, that the Courts of Duval and St. Johns should be held on the same day, had commanded an impossibility, as the courts could not be in two places at once, and therefore was void. This point is submitted without argument.

The second error assigned is that the court erred in overruling demurrer to second count in plaintiff's declaration. This is a count for what plaintiff might have made in six months time, lost by reason of the losing of his dental instruments.

The early cases in both the English and American courts generally concurred in denying profits as any part of the damages to be compensated, and that whether in cases of contract or tort. Sedgwick on Damages, 5th ed., p. 69.

We admit that the late decisions modify this rule.

Mr. Sedgwick says: "Indeed on reviewing the whole subject, it seems to me that the Louisiana Code expresses the true rule and that it is no more than justice that a defendant in default should be compelled to make good the damages sustained by his breach of contract, which were contemplated or may be reasonably supposed to have entered into the contemplation of the parties at the time of the contract." Sedgwick on Damages, 77.

The rule as laid down in the leading English authorities is, " When two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, i. e. according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow such a breach of contract under those special circumstances so known and communicated. But on the other hand, if those special circumstances were wholly unknown to the party breaking the contract, he at the most could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances for such breach of contract. For had the special circumstances been known, the parties might have expressly provided for the breach of contract by special terms as to the damage in that case, and of this advantage it would be very unjust to deprive them. The above principles are those by which we think the jury ought to be guided in estimating the damages arising out of any breach of contract." Hadley vs. Baxendale, 9 Exch., 341, cited in Sedgwick on Damages, 78.

The rule adopted in Hadley vs. Baxendale is an affirmation of the law as laid down by Sedgwick. See note 1, on page last quoted.

In Griffin vs. Colver, 16 N. Y., 489, called by Sedgwick the leading American case on this subject, the same doctrine is held. The same doctrine has been recognized or adopted

in 2 L. T., (N. S.,) 170 ; 1 L. R., (C. P.,,) 329 ; 28 N. Y., 72 ; 15 Wis., 318 ; 13 ib., 31 ; 13 Md., 314 ; 33 Vt., 92 ; 5 N. C., 299 ; 11 Texas, 44 ; 4 Cal., 392 ; 6 Cal., 19 ; cases cited in note on pages 79 and 80, Sedgwick on Damages.

In Anderson vs. The North Eastern Railway Co., 4 L. T., (N. Y.,) 216, the Court of Exchequer refused to apply the rule in Hadley vs. Baxendale to a Railway Co. sued as warehousemen only so as to imply any notice from the mere deposit of the parcel which should affect the warehouseman beyond the value of the article.

And if through the negligence of the carrier or other party to the contract, some damages are sustained within the rule in Hadley vs. Baxendale, yet if through neglect of the duty which the law imposes on the injured party of making reasonable exertions to render the injury as light as possible, the damages are unnecessarily enlarged, the increased loss falls on him.   Hamilton vs. McPherson, 28 N. Y., 72.

In Jones vs. Boyle, 1 Stark., 493, Baron Alderson remarks that " the damages to be recovered by the plaintiff were such as might be reasonably supposed to have been in contemplation of both parties at the time the contract was made, as the probable result of the breach of it in the bulk of broken contracts had no application, though proper to be taken into consideration by *carriers and their customers*."

We call to the special notice of the court the discussion of the cases bearing on the point under consideration, found in the notes on pages 79, 80, 81, &c., Sedgwick on Damages.

Now to apply this law to our case, the jury undoubtedly based a portion of their verdict on what the plaintiff would have earned in the time he alleges he was idle for want of the instruments.   This is evident from the informal, itemized verdict first rendered by the jury, and afterwards corrected as to form by the court.

There is no evidence to show that the defendant or his agent knew anything about the calling or occupation of the plaintiff, or the kind, or character of the contents of the

valise. Damages, therefore, in the nature of what a dentist might earn in one or six months, was not, and could not have been contemplated by the parties at the time.

Will the law countenance any such injustice as to make the defendant suffer because the plaintiff chose to remain idle instead of purchasing another set of instruments, and thereby doing what the court declares in Hamilton vs. McPherson, 28 N. Y., it was his duty to do, i. e., "to use reasonable exertions to render the injury as light as possible?"

As to whether a dentist would make money at any particular time is dependent upon too many contingencies to make it a rule for damages, and too remote from the original contract.

The third assignment is that the court erred in admitttng illegal testimony. If the principles which we have invoked are established law, then all questions seeking to ascertain what plaintiff could have earned had he not lost his instruments were illegal, and the answers thereto inadmissible.

The fourth and fifth assignment of errors we submit without argument.

As to the sixth assignment of errors, we contend that the court erred in refusing to give the fourth charge asked for by the defendant's counsel. The court was asked to charge the jury:

"4. That if it appears by the evidence that the contents of the valise in question were not such as is ordinarily carried by a passenger for his personal convenience, then plaintiff cannot recover."

That the authorites cited as supporting this charge, to-wit: Angell on Carriers, 100 and 101; 1 Parsons on Contracts, 719, 720, fully sustain it, and it was error for the judge to refuse the charge, as it was good law and applicable to the case.

Of the fifth and sixth instructions asked for by the defendant and refused by the court, the same may be said.

Refusing these charges had a tendency to impress the jury

with the idea that it was their duty to find the defendant liable, no matter what might be the nature of the contents of the valise.

While the law is as laid down by Parsons and sustained by the best authorities, "that the common carrier of passengers is not liable as such for the loss of their baggage beyond that amount which he might reasonably suppose such passenger would carry with him, nor for property such as is not usually included within the meaning of baggage. Thus not for goods carried by way of merchandise, nor for a larger sum of money than the passenger might reasonably take on such a journey for his expenses. But there may be special articles as fishing gear or sporting apparatus which one carries for his amusement, and in these and other cases it may often be very difficult to draw the line between what would come within the liability of the carrier and what would not; the question would not only be materially affected by circumstances, but is one of those upon which different individuals would be very likely to differ, and perhaps it is impossible to fix upon anything like a definite standard. But the principle is plain enough and the reason and justice of it are undeniable. And the difficulty in the application of the principle, whether by the court or the jury, is of a kind which must often occur in the administration of the law. It must always be a question of mixed law and fact where the court states the principle and illustrates its bearing upon the case at bar as it sees fit, and the jury apply the principle so stated as best they can." 1 Parsons on Con., 3d ed., 720, 721, 722.

The question for this jury to consider was, whether dental instruments were baggage, and whether it was reasonable to suppose that this dentist, traveling in the woods of Florida, would have a jeweled set of instruments worth three or four times an ordinary set, and whether the defendant should be made to pay for them.

. It was due to the defendant that the questions at issue

should have been fairly put before the jury, which was not done, we respectfully contend, by the court below.

The court erred in refusing the last charge asked for by defendant. This charge was intended to apply the 69th section of the act of Congress of February 28th, 1871, 16 U. S. Statutes at Large, p. 458, 459, to the case at bar.

This act contains many provisions of great stringency, enforced by severe pains and penalties. The 69th section we contend was intended to modify and change the liability of carriers, and while most of the provisions are far the benefit of the passengers and shippers, this section is for the protection of the steamboat. The language is, " if any shipper of diamonds or other precious stones, gold or silver, in manufactured or unmanufactured state, gold or silver plate, or plated articles, shall lade the same as freight or *baggage*, without written notice of the true character and value of the same, the carrier shall not be liable."

We contend that since the passage of this law, jewelry in a trunk, or jeweled instruments plated with gold or silver plate, cannot be sued for and the value thereof recovered without the previous written notice required by the statute. " Shall lade the same as freight or *baggage*." Baggage means trunks and other articles carried by a passenger, something accompanying and attending the person.

In conclusion, we again ask this court to consider how broad and uncertain a rule will be established if it is held that damages so remote and contingent as what plaintiff could have made as a dentist, if he had not lost his instruments, are the damages for which a carrier is liable, who loses a valise containing the instruments of a dentist, which valise was received without notice of its contents.

If this be law, then if an attorney going to argue a case at Palatka, on an agreed fee of two thousand dollars for the argument, through the negligence of the carrier his trunk worth ten dollars, and his law books and brief worth one hundred dollars, are lost. Owing to the loss of his brief and

books he cannot make the argument and loses his fee ; he sues the carrier. Ought the two thousand dollars which he might have made had his trunk not been lost, and had he made the argument, and had his client fulfilled his promise, to be considered as damages legally recoverable out of the carrier ?

Is not the case at bar similar in principle ?

*Cooper* & *Ledwith* for Appellee.

RANDALL, C. J., delivered the opinion of the court.

The first error assigned is, that the court refused to grant a continuance on defendant's motion, made upon the ground that the time of holding the court was not a legal term, be-cause a term was appointed by the law to be held on the same day in St. Johns county and Duval county in the same circuit.

If the ground of the motion was valid, to-wit : that there was no legal term being held, the court could not act at all, and therefore could not make an order of continuance. If the ground of the motion was not valid, the continuance was properly refused. It is true that the court could not sit in both counties at the same time, but it does not follow that it could not sit in one county. The court was sitting in Duval, and was therefore not sitting in St. Johns. The Judge held the term in Duval at the time named in the law for that purpose, as we think he might lawfully do.

Second. The appellant says the court erred in overruling defendant's demurrer to the second count in plaintiff's decla-ration, and third, in admitting illegal and irrelevant testi-mony under said second count.

The question here presented is, whether the plaintiff could, in this action against a common carrier for the loss of his baggage, he being a traveller upon the defendant's steamboat, recover damages for the loss of the profits which he might have made in the practice of his trade or profes-

sion, if his baggage, including the implements of his trade, had not been lost. The third exception arises upon the questions put by plaintiff's counsel on the trial to the plaintiff as a witness in his own behalf, as to whether he was detained at Jacksonville in consequence of the loss, and what were his monthly receipts from his business at home, and whether he was prevented by the loss of his instruments from pursuing his profession and for what length of time. The court permitted the questions to be answered, notwithstanding defendant's objections. Witness answered that his receipts for several years had averaged three hundred dollars per month, or at least three thousand dollars per year; that he was prevented by the loss of his instruments from pursuing his business to some extent for one month, and had never since been as well able to pursue his business for want of those instruments.

The law in such cases is laid down by Sedgwick in his book on the measure of damages as follows: "On reviewing the whole subject, it seems to me that the language of the Louisiana Code expresses the true rule; and that it is no more than justice that a defendant in default should be compelled to make good the damages sustained by his breach of contract which were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract."

Under ordinary circumstances the damages flowing from a breach of contract to carry and deliver goods would be the value of the goods at the time of the loss and interest on the amount. If the owner of the goods would charge the carrier with any special damages, he must have communicated to the carrier all the facts and circumstances of the case which do not ordinarily attend the carriage or the peculiar character and value of the property carried, for otherwise such peculiar circumstances cannot be contemplated by the carrier. "For (says the court in Hadley vs. Baxendale, 9 Exch., 341,) had the special circumstances been

known, the parties might have expressly provided for the breach of the contract by special terms as to the damage in that case, and of this advantage it would be very unjust to deprive them. These principles are those by which we think the jury ought to be guided in estimating the damages arising out of any breach of contract." And in Griffin vs. Colver, 16 N. Y., 489, Judge Selden states it thus: "The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract—that is, they must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed."

In the present case there is no room for pretense that the defendant contemplated that the plaintiff would sustain any damage beyond that which would follow the loss of any kind of baggage; *i. e.*, the value of the goods and the expense of a brief detention in endeavoring to find them, with interest. The defendant cannot be chargeable for the loss of dentist's tools beyond what he would be liable to pay any other passenger for the loss of any goods of like value, unless he has especially agreed to be responsible for other loss or damage. Doctor Gale did not inform the defendant that he was a dentist; that his tools were set with diamonds and rubies, or that in case they should be lost he would be unable to pursue his avocation for six months or for one month; and hence the defendant did not contemplate any such risk in carrying him as a passenger upon his steamboat, with his valuable baggage.

The court therefore erred in overruling the defendant's demurrer to the second count in the declaration, and in admitting testimony as to the probable earnings of the plaintiff as a measure of damages for the loss of the goods, and the court should have charged the jury in such manner as to confine their inquiries upon this subject to the rule we have indicated.

The fourth and fifth errors assigned are, that the court erred in its charge to the jury, and in charging the jury as requested by the plaintiff.

It is unnecessary to elaborate upon these propositions. In examining the record we find that the Judge's charge is in the main correct, except in its too general language as to the allowance of damages, already alluded to. It is not entirely proper, however, for the Judge to specify what particular articles of property, designating them by name, may be included in the term "baggage," as this comes very nearly to an argument and opinion upon the proofs in the case. For instance, in giving the fourth instruction asked for by plaintiff to the jury, this language was used : "Thus a carpenter's tools have been held suitable baggage for a carpenter, a surgeon's instruments for a surgeon." While it is true that courts have refused to set aside a finding of a jury to that effect, on the ground that " it is for the jury to decide whether the articles contained in the plaintiff's valise, for which payment is claimed, are such property as may be deemed baggage," (as the jury were instructed on the request of the defendant,) it is not proper for the court to suggest, by way of example, that which may influence the jury upon the question of fact they are to try.

The sixth error assigned is that the court refused to charge the jury, as requested by the defendant's counsel. The instructions asked by the defendant's counsel were given by the court, except the 4th, 5th, 6th and 7th, and of these, all except the 7th had already been given in substance. It is not error to refuse to repeat a charge already given.

The seventh instruction asked by the defendant's counsel is in these words : " If it appears that the valise in question contained jewelry or precious stones, or instruments set with gems, precious stones, or gold, or other precious metals, or gold or silver plated or mounted instruments, and that no written notice of the character and value of the

same was given to the master, clerk, agent or owner of de-
fendant's said steamboat, then defendant is not liable for
the same as a carrier." This was refused by the court. It
is insisted by the defendant that this instruction should
have been given according to the provisions of the 69th
section of "An act for the better security of life, &c.,"
passed by the U. S. Congress, and approved Feb. 28, 1871,
which provides, "if any shipper or shippers of platina,
gold, gold dust, silver, bullion or other precious metals,
coins, jewelry, bills of any bank or public body, diamonds
or other precious stones," and other like articles enumer-
ated, "contained in any parcel or package or trunk, shall
lade the same as freight or baggage on any boat or vessel,
without at the time of such lading giving to the master,
clerk, agent or owner of such boat or vessel receiving the
same, a written notice of the true character and value
thereof, and having the same entered on *the bill of lading
therefor*, the master and owner or owners of said boat or
vessel shall not be liable as carriers thereof."

It seems clear, however, that this section refers to proper-
ty of the descriptions mentioned, sent by shippers of such
goods in the common mercantile acceptation of the words
*shipper or shippers*, who forward goods as freight or baggage
under bills of lading, and that the act had in view the pro-
tection of the revenue of the United States, as well as the
protection of vessels against fraud and against the penalties
for violations of revenue laws. The language used does
not well apply to a passenger who carries in his trunk his
ordinary wearing apparel, ornaments and professional im-
plements, however rare or valuable. He is not a shipper,
and does not "lade" a vessel as a shipper, nor give or
receive a bill of lading for his personal baggage, nor pay
freight thereon, as does a shipper. We do not think the
court erred in refusing to give the instruction.

The court charged the jury that "all articles, which it is
usual for persons traveling to carry with them, whether

from necessity, convenience or amusement, fall within the term *baggage.*" And, " that if it appears by the evidence, that the contents of the valise, or any portion of the same, were of a great or extraordinary value, for a person of plaintiff's business and station in life, without notice of the same being given to defendant, he cannot be held liable for their loss." And the court further charged that it is for the jury to decide what articles in the valise came within the definition of baggage, and this last was given at the request of the defendant's counsel. The Supreme Court of Pennsylvania in McGill vs. Rowland, 3 Barr, 451, say that " it is not obvious in what manner the court can restrict the quantity or value of the articles that may be deemed proper or useful for the purposes of travelling, because in the nature of things it is susceptible of no precise or definite rule ; and when there is an attempt to abuse the privilege, a court must rely on the intelligence and integrity of the jury to apply the proper corrective." (See Angell on the law of Carriers, sec. 115, *et seq.*)

This, after all, is the correct rule for the determination of this case. The jury must determine, as a question of fact, whether the articles contained in the plaintiff's valise were the necessary and convenient articles of baggage of the plaintiff as a traveller, according to his occupation and position in life, and was their value a reasonable value of such articles to be carried as baggage, for the loss of which a common carrier should be held liable under the circumstances of the case. Any apparent abuse by the jury, whereby gross injustice should be done, would of course be corrected by the court.

For the errors in the proceedings and trial herein mentioned, the judgment must be reversed, and a new trial granted. The defendant is entitled to judgment upon his demurrer to the second count in the declaration.

Judgment reversed, and a new trial granted.