443 So.2d 260 (1983)
LUCAS TRUCK SERVICE COMPANY, Appellant,
v.
Thomas M. HARGROVE, Appellee.
No. AR-432.
District Court of Appeal of Florida, First District.
December 20, 1983.
Rehearing Denied January 13, 1984.
David W. Carstetter, Kent, Watts, Durden, Kent, Nichols & Mickler, Jacksonville, for appellant.
*261 Mark S. Kessler, Jacksonville, for appellee.
LARRY G. SMITH, Judge.
Lucas Truck Service Company (Lucas) appeals a final judgment awarding Hargrove $8,327.75 as damages sustained in a controversy growing out of an agreement for the repair of Hargrove's truck by Lucas. We find error in the award of damages for loss of profits, which accounted for the major portion of the damages found by the trial judge. Reversed and remanded for a new trial on the issue of damages.
Hargrove purchased a 1971 GMC Astro truck from Clarence Nelson, which he then leased to Mercury Motor Express pursuant to a contractor operating agreement. A few months later, the truck broke down and was taken to Lucas to be repaired. Nelson arranged for the truck to be hauled back to Jacksonville, paid the hauling expense, and was the one who suggested the truck be taken to Lucas. Difficulties between Lucas and Hargrove developed when Lucas notified Hargrove that the repairs would exceed the estimate given by Lucas. Hargrove demanded possession of his truck, and the balance remaining from his deposit of $2,000.00, less the cost of work done by Lucas up to that time. Lucas refused to return the remainder of the deposit, and initially refused to return the truck. However, thirteen days after Hargrove's demand, Lucas did return the truck.
Hargrove filed a three-count complaint charging Lucas with theft, failure to give a written estimate in violation of Chapter 559, Part VIII, Florida Statutes (1981) (Florida Motor Vehicle Repair Act), and conversion. The trial court granted Lucas' motion to dismiss the conversion count. After a non-jury trial on the remaining counts, the trial court entered final judgment for Hargrove and awarded damages of $8,327.75.
The evidence is in sharp conflict as to exactly what arrangements were made for the repair of the truck. Hargrove's version was that on January 11, 1982, Lucas gave him an oral estimate of repairs, not to exceed $5,000.00, and called for a deposit of $2,000.00 before starting work. He acknowledged that payment of the remaining repair charges was guaranteed by Nelson. Lucas, on the other hand, contended that its dealings were primarily with Nelson, who was the party agreeing to be responsible for the repair bill. Lucas further contended that Nelson's agreement with Hargrove called for Hargrove to advance the sum of $2,000.00 to Nelson, and that Nelson would pay for the repairs. Lucas maintained that it turned Hargrove's $2,000.00 deposit over to Nelson in accordance with this agreement. Lucas' evidence also disclosed that it obtained a written waiver from Nelson releasing it of any duty to submit a written repair estimate under Section 559.905, Florida Statutes.[1] Lucas also established that Nelson actually paid the shop bill of $331.25 for disassembling the engine.
The trial court agreed with Hargrove's version of the case, and made the following findings of fact: Hargrove authorized Lucas to work on the truck after receiving an oral estimate of repairs not exceeding $5,000.00. Lucas agreed to perform the work if Hargrove gave a $2,000.00 deposit before work commenced. Payment of the remaining repair charges was guaranteed by Nelson. Hargrove borrowed the deposit money from his father and Mercury Motor Express, which he delivered to Lucas. After work began on the truck, Lucas notified Hargrove that the estimate of repairs was being increased and it would cost $7,000.00 to $8,000.00 to rebuild the engine. Hargrove directed Lucas to stop work, bill him for the work done and refund the balance of the $2,000.00. Lucas refused to refund *262 to Hargrove $1,668.75, which was the balance of the $2,000.00 deposit remaining after the charge of $331.25 for disassembling the engine was paid. Lucas initially refused to return the truck but did release it thirteen days later after Hargrove employed an attorney. Without the $1,668.75, Hargrove was unable to have his truck repaired by another mechanic. A few weeks later, Nelson repossessed the truck. Hargrove lost his job with Mercury Motor Express.
Initially, we consider appellant's contention that Hargrove's recovery is not based on any of the pleaded causes of action.[2] Admittedly, Hargrove sought recovery under the Florida Motor Vehicle Repair Act on the basis that Lucas failed to submit a written estimate for repairs. Although the final judgment does not address the connection between the violation of the act and the damages claimed by Hargrove, it does point out that the repair estimate was an oral estimate. Further, the evidence (viewed in the light most favorable to Hargrove) clearly discloses that the conflicts which precipitated this entire controversy resulted from Lucas' failure to reduce to writing the basic terms under which it undertook this repair work. Section 559.905(1), subparagraphs (a)-(n), inclusive, enumerates the details which must be included in the written repair estimate required under the act. One of the required items is: "The customer's intended method of payment." Section 559.905(1)(j). Thus, both the pleadings and the proof brought Hargrove's cause of action within the ambit of the statute. That Hargrove was damaged by the detention of the truck and Lucas' withholding of the remainder of the deposit, based on Hargrove's version of the facts as found by the trial court, does not appear to us to be subject to serious dispute.
On the matter of the amount of damages recoverable by Hargrove, we find it necessary to reverse. As previously noted, the trial court's award of damages consisted mostly of "lost profits." This element accounted for $6,659.00 of the total damage award of $8,327.75, the remainder of $1,668.75 being the balance of the $2,000.00 deposit, after deducting the shop bill of $331.25. We find that the calculation of damages based upon lost profits cannot be sustained under the facts and the applicable law.
Generally, anticipated profits of a commercial business are too speculative and dependent upon change in circumstances to warrant a judgment for their loss; however, if profits can be established with reasonable certainty they are allowed. Massey-Ferguson, Inc. v. Santa Rosa Tractor Company, Inc., 415 So.2d 865 (Fla. 1st DCA 1982). The court's award of lost profits to Hargrove apparently rests upon a series of assumptions which, considered together, demonstrate the speculative nature of this award. In order to find Hargrove entitled to loss of anticipated profits it must be assumed, among other things, that Hargrove could get his truck repaired, that his truck would not break down again, that Hargrove would continue his employment with Mercury Motor Express, and most importantly, that Hargrove could avoid repossession of the truck. Hargrove was already in arrears in his truck payments to Nelson when this breakdown occurred. Repossession by Nelson was a distinct possibility, if not probability. Further, Hargrove had no guarantee as to when or if he could get his truck fixed and back out on the road. Although Hargrove presented the testimony of a truck mechanic to the effect that the truck could be repaired for $4,500.00 to $5,000.00, with a $2,000.00 deposit, the mechanic had never seen the truck and did not know the extent of the damage to it. Further, although Hargrove was wrongfully deprived of his truck by Lucas only for a period of thirteen (13) days, the trial court awarded lost profits for three months, apparently on the theory that since Hargrove was given three months by Mercury Motor Express to repay *263 the loan of funds he used to make up a part of the $2,000.00 repair deposit, his continued employment by Mercury was assured for at least this three month period. The award of lost profits must be reversed because these circumstances fail to demonstrate the "reasonable certainty" required under the rule cited, and the use of three month period in the calculation of such damages was arrived at in a purely arbitrary manner, without an adequate foundation in fact. Florida Outdoor, Inc. v. Stewart, 318 So.2d 414 (Fla. 2nd DCA 1975), cert. denied 333 So.2d 465 (Fla. 1976).
The award of lost profits is reversible for a second reason. In order that a party may recover profits lost by reason of a breach of contract, the loss must be the natural and proximate result of the breach, whether as an ordinary consequence thereof, or as a consequence which may, under the circumstances, be presumed to have been in the contemplation of the parties at the time they made the contract. Remote damages cannot be recovered. 17 Fla.Jur.2d, Damages, § 79, p. 86. Although an action based upon failure to comply with the Florida Motor Vehicle Repair Act stands on a somewhat different footing than an action for breach of contract, we consider them sufficiently similar to allow the application of similar rules as to damages, particularly as here, where the dispute was essentially one of disagreement as to terms of the contract. When Lucas contracted with Hargrove to repair his truck, it cannot be said that the parties contemplated that a delay in redelivery of the vehicle, or a dispute concerning the application of or return of the remainder of the $2,000.00 deposit ($1,668.75), would result in Hargrove's failure to have his truck repaired, nor in his losing the truck through repossession. In Brock v. Gale, 14 Fla. 523 (1874), the plaintiff, a dentist, took passage on the defendant's steamer. Some time before the arrival of the steamer in Jacksonville, the dentist's valise which contained his set of instruments was lost. The court held that recovery of the market value of the tools was justified, but that loss of the dentist's profit from not being able to practice his profession was not recoverable as it was too remote. Similarly, we hold that an award of lost profits is too remote under the facts presented here. See, Taylor Imported Motors, Inc. v. Smiley, 143 So.2d 66 (Fla. 2nd DCA 1962).
The proper measure of damages in this case is an award for Hargrove's loss of use of the truck for the period of thirteen days during which Lucas refused to return the truck. A. Mortellaro & Co. v. Atlantic Coast Line R. Co., 91 Fla. 230, 107 So. 528 (1926). Hargrove is also entitled to return of the balance of his deposit in the sum of $1,668.75 plus interest from January 26, 1982, the date it was due. Hughes v. Irons, 370 So.2d 76 (Fla. 2nd DCA 1979).
AFFIRMED in part, REVERSED in part, and REMANDED for new trial on damages only, in accordance with this opinion.
WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] This was not done until January 26, 1982, some fifteen days after the truck was turned over to Lucas, and, incidentally, on the same date Hargrove was notified of the increased repair estimate, at which time he demanded return of the truck and the balance of his $2,000.00 deposit. Since the trial judge obviously accepted Hargrove's testimony over that of Lucas, this belated attempt to comply with Chapter 559 was of no significance in the case.
[2] The trial court dismissed the conversion count, and after hearing the evidence, found that Hargrove had not sustained the allegations of the theft count.