459 So.2d 335 (1984)
DOUGLASS FERTILIZERS & CHEMICAL, INC., et al., Appellants,
v.
McCLUNG LANDSCAPING, INC., etc., Appellee.
No. 83-1145.
District Court of Appeal of Florida, Fifth District.
October 18, 1984.
Rehearing Denied November 28, 1984.
*336 Marcia K. Lippincott of Marcia K. Lippincott, P.A., Dale O. Morgan, Dean, Ringers, Morgan & Lawton, P.A., Orlando, for appellants.
Abbott M. Herring of Abbott M. Herring, P.A., Sanford, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
McClung sued Douglass and its insurer, Florida Farm Bureau, for damages to its sod field following treatment by Douglass with fertilizer and herbicide. The jury awarded McClung damages in the amount of $260,348.88 which included $53,848.88, the cost of replacing sod at its numerous projects in Central Florida. As to that portion of the judgment, we find no error and affirm.
The question which concerns us is whether McClung was entitled to the remaining $206,500.00 as damages for lost profits. This award derived from the fact that Cardinal Industries ceased doing business with McClung after the delivery of bad sod to their job sites.[1] Douglass maintained below that the claim for lost profits was too remote and speculative and that the evidence presented was insufficient to establish the claim.
This case went to the jury on breach of contract and negligence theories. It is well established that in both contract and tort actions, lost profits are recoverable only if their loss is proved with a reasonable degree of certainty. 17 Fla.Jur.2d Damages § 76. See Lucas Truck Service Co. v. Hargrove, 443 So.2d 260 (Fla. 1st DCA 1983). In addition, in contract actions, lost profits are allowed only if the loss was caused by the defendant's wrongful act and the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into. Lucas Truck Service, 443 So.2d at 263. In tort cases, the rule, while stated differently, is basically the same, that the plaintiff may recover all damages which are a natural, proximate, probable or direct consequence of the act, but do not include remote consequences. Taylor Imported Motors, Inc. v. Smiley, 143 So.2d 66 (Fla. 2d DCA 1962).
For instance, in Taylor Imported Motors, the plaintiff sought to recover damages for loss of profits caused by the loss of sale of his automobile where the defendant negligently damaged the vehicle. The appellate court held that while the plaintiff could recover for actual damages to the car, his claim for loss of profits was too remote. The court, while recognizing that certain prior cases were based on a contractual relationship between the plaintiff and defendant, nevertheless referred to them as providing guidance in determining what is remote:
In the case of Brock v. Gale, 1874, 14 Fla. 523, Defendant's loss of Plaintiff's dental tools justified recovery of their market value, but not loss of the dentist's profit or income from not being able to practice his profession until the tools were replaced, the latter being too remote.
In the case of Bayshore Development Co. v. Bonfoey, 1918, 75 Fla. 455, 78 So. 507, L.R.A. 1918D, 889, the difference between the value of a building as designed and constructed and its value as properly designed and constructed was recoverable, but not the loss of rentals or delays in occupancy, the latter being too remote.
In the case of State ex rel. Peters v. Hendry, 1947, 159 Fla. 210, 31 So.2d 254, although damage to a dragline was not *337 passed on, it was held that loss of profit from depreciated sale value of cattle made sick and debilitated because, due to a breach of warranty of fitness, the dragline was not available to prepare proper drainage for their grazing lands was not recoverable as being too remote.
143 So.2d at 68.
The claim for lost profits here is likewise too remote. McClung sought to recover for loss of future business with Cardinal, not business that it actually had with the developer. McClung had no future contract binding Cardinal to buy further shipments of sod. No future price was established or agreed upon. See generally Ohoud Establishment v. Tri-State Contracting, 523 F. Supp. 249 (D.N.J. 1981).
In addition, such an award is speculative. The testimony below was somewhat dubious on why Cardinal refused to do further business with McClung. There was testimony that prior to the damaged grass being delivered, Cardinal had become dissatisfied with McClung's grass because it was of poor quality and had a lot of weeds. Cardinal began buying a higher grade of grass, Floratam, and McClung did not grow this type of grass, though it claimed it could have bought such grass and resold it at a profit. Nevertheless, this evidence indicates the speculative nature of the award of lost profits.
The court should have granted the motion for directed verdict on the issue of McClung's entitlement to recovery of lost profits. We therefore reverse and remand for further proceedings consistent herewith.
AFFIRMED in part; REVERSED in part.
ORFINGER and SHARP, JJ., concur.
NOTES
[1] This award was based on testimony that Cardinal bought approximately 3.5 million square feet of grass (known as Floratam) in the year after it stopped doing business with McClung. Based on McClung's stated profit of 5.9 cents per square foot, the jury awarded it $206,500.00 (3.5 million x 5.9 cents) in lost profits.