COBB, Judge.
Horizons Condominium Management Association, Inc. (hereinafter the Association) has appealed entry of a final judgment which reformed its declaration of condominium in respect to the legal description of a unit in the condominium, awarded damages to the owners of that unit, and granted those plaintiff/owners an attorney fee in an amount to be determined at a future hearing.[1]
The essential facts giving rise to the instant litigation are not in dispute. The plaintiffs below, Charles and Nicholas Salvato, purchased Unit 102 in the Horizons Condominium from Frances and Kateri Ruddy in July, 1981. At that time, the recorded declaration of condominium attributed to Unit 102 a 1.62684 percent undivided interest in the common elements. Prior to entering into their contract for purchase, the Salvatos had been told by the then president of the Association, Paul O’Neill, that the original plan was to have Units 102 and 103 include side yards which would increase their square footage. O’Neill was also a general partner of the developer of the condominium. O’Neill explained to the Salvatos that during construction it became necessary to slope the side yards because of building requirements so that it was not feasible to have the two units own them. O’Neill assured the Salvatos that he had changed, or would change, the boundaries of Unit 102 so that it had the same square footage as other two bedroom units and, thus, the same assessment (from 1.62684 down to 1.18465 percent). The deed from the Ruddys to the Salvatos, however, contained the higher percentage figure in conformity with the declaration.
On August 5,1981, the Association held its first meeting of the board of directors. Notice had been sent to all unit owners and approximately twenty to thirty such owners attended. O’Neill explained at this meeting that the situation for Units 102 and 103 was “unequitable” and a motion was passed lowering the assessment for these two units.[2] It appeared from the minutes that O’Neill had advised the others that “the boundaries of the units were changed to delete the yards....” Thus, O’Neill claimed that Units 102 and 103 had the same square footage as the other two-bedroom units in the project.
O’Neill has constantly maintained that there must have been some document prepared at some point in time which physically attempted to change the boundaries even though such a document was never recorded *924 anywhere nor could it be produced at trial. Furthermore, pursuant to the declaration of condominium, paragraph 3.3, the developer would have to own the unit in order to change the boundaries without the vote of the members of the Association.
Approximately ten years elapsed with the Salvatos paying the reduced assessments. Ad valorem taxes, however, were apparently assessed by the county based on the higher square footage shown by the deed. During these years, the sloped side yard of Unit 102 was maintained by the Association. In late 1990, the disparity between the Salvato assessment and the description in the declaration of condominium was discovered by a new treasurer. At that point, the Association notified the Salvatos by letter that their assessment was being increased for Unit 102 by some $60.00 per month. The Salvatos refused to pay the increase but proffered monies in an amount equal to the assessment being paid by other two bedroom units. These proffers were refused and, subsequently, the Association filed a lien against Unit 102.
Upon learning of the proposed increase, the Salvatos went to the tax assessor’s office and found that their tax assessment was higher than for other two bedroom units in the building because the tax assessor had included the disputed side yard. The Salva-tos calculated that they had paid some $5,748.00 in excess property taxes from 1981 through the date of the trial based upon a comparison of their unit with similar two bedroom units in the building.
At the point in time that the assessment dispute arose, the Salvatos were negotiating with one Kenneth Cox for the sale of their unit to him. Although no written contract was ever executed, the Salvatos contend their sale was lost because of the Association’s insistence on raising their fees.
The Salvatos then filed an action against the Association seeking damages (for lost sale and higher taxes) and reformation. The Association counterclaimed for foreclosure of its lien. In its response, the Association contended the trial court was not empowered to reform the declaration of condominium without approval of all unit owners.
After a non-jury trial, a judgment was entered which purported to reform the Association’s declaration of condominium so that Unit 102 would have the same square footage as other two-bedroom units in the Horizons Condominium, ordered that the Salvatos and any subsequent owner of Unit 102 pay a monthly assessment equal to the monthly assessments of other two-bedroom units in the Horizons Condominium, awarded the Sal-vatos damages in the amount of $8,125.27 together with attorney fees and costs and found that the lien claim of the Association for unpaid assessments should be offset against “additional ownership expenses” for maintenance of Unit 102 incurred by the Salvatos subsequent to, and resulting from, their lost sale to Cox. This appeal ensued.
We affirm the reformation of the declaration of condominium by the trial court, but reverse the damage award to the Salva-tos in toto. That portion of the award based upon the lost sale to Cox was not based upon any legally acceptable evidence of loss, e.g., the difference between the prospective sale price and the value of the property, which the Salvatos still have. The subsequent maintenance costs do not represent the measure of their loss, if any, from the “lost sale” to Cox. See, e.g., Douglass Fertilizers & Chemical, Inc. v. McClung Landscaping, Inc., 459 So.2d 335 (Fla. 5th DCA 1984).
In respect to that portion of the damage award representing “overpayment” of ad valorem taxes by the Salvatos, that was a matter between them and the taxing agency. The record reflects that the Salvatos, as record owners, were assessed and paid the ad valorem taxes on the side yard after they purchased the unit in 1981, even though the yard was effectively unusable as a result of the sloping. Once the tax assessor was informed of the property’s true condition in 1992, it was no longer assessed. The Salva-tos cannot now challenge the assessor’s past assessments. See § 194.171(2), Fla.Stat. Because assessments on the yard (back to 1981) were not warranted, and were stopped once its time condition was related to the tax assessor, the Salvatos cannot now recover these overpayments from the Association. *925 During the period in dispute, only the Salva-tos had standing to challenge their tax assessment. We also note that they have not sought to reform their deed from the Ruddys at any time since. In fact, it was conceded at oral argument that legal title of record to this disputed side yard still remains in the Salvatos.
Given our affirmation of the reformation ordered by the court we also affirm the award of attorney fees, which was based on section 718.303(1), Florida Statutes, and the cost award. See Moritz v. Hoyt Enterprises, Inc., 604 So.2d 807 (Fla.1992).
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
HARRIS, C.J., and PETERSON, J., concur.

. The standing of the Association to represent the condominium unit owners as a class was not raised below, nor is it raised on appeal. See § 718.110(10), Fla.Stat.

. O'Neill conceded that the unit owners did not vote at the August 5, 1981 meeting, and also conceded that if the assessment for number 102 was lowered, they would have to be raised for all the other units to make the total come out to 100 percent. The action taken by the board at this meeting in lowering the Salvato assessment was clearly ultra vires. See §§ 718.104(4)(f), (g); 718.114; 718.115(2), Fla.Stat. (1981).