845 So.2d 998 (2003)
SIHLE INSURANCE GROUP, INC., Appellant,
v.
RIGHT WAY HAULING, INC., Appellee.
No. 5D01-3327.
District Court of Appeal of Florida, Fifth District.
May 23, 2003.
*999 Donald L. O'Dell of Meier, Lengauer, Bonner, Muszynski & Doyle, P.A., Orlando, for Appellant.
Randy E. Schimmelpfennig of Billings, Cunningham, Morgan & Boatwright, P.A., Orlando, for Appellee.
THOMPSON, C.J.
SIHLE Insurance Company ("SIHLE") appeals the trial court's award of damages for lost profits to Right Way Hauling, Inc. ("Right Way") contending that Right Way's expert did not have the necessary qualifications to offer opinions concerning lost profits and that the evidence of lost profits was too speculative. We find no abuse of discretion in allowing Right Way's expert to testify, but we reverse the lost profits award and remand the case for a new trial on damages.
Right Way was a business that manufactured mulch, and in 1999, it purchased a power screen that produced various sizes of mulch and sorted the products according to size in a single grinding. There was testimony that Right Way was the only business in central Florida with a power screen, and its business was thriving because it could produce mulch at a faster rate with the power screen. Upon purchasing the power screen, Right Way contacted its insurance agent, SIHLE, and requested that the power screen be added to its insurance policy, which was issued by Century Surety Company ("Century"). On 29 July 1999, the power screen was destroyed in a fire. Century denied Right Way coverage for the loss of the power screen because it determined that the power screen was never added to the policy. Allegedly, the Century policy was never changed to add the power screen because SIHLE's agent failed to follow up on the coverage change. Right Way claimed that without insurance coverage, it was unable to replace the power screen, and was *1000 therefore unable to produce the quantity and quality of mulch it had produced with the power screen. Right Way eventually sold its business.
Right Way sued SIHLE for negligence and breach of contract for failing to obtain the insurance coverage for the power screen. The jury found that SIHLE had breached its contract and was negligent in failing to procure insurance on Right Way's behalf. The jury awarded Right Way $90,000 for the loss of the power screen and $256,000 in damages for lost profits.[1]
SIHLE first contends that the trial court erred by failing to grant SIHLE's motion for directed verdict because Right Way's expert was not qualified to testify about lost profits. A trial court has broad discretion in determining the subject upon which an expert may testify in a particular trial. County of Volusia v. Kemp, 764 So.2d 770 (Fla. 5th DCA 2000) (citing Angrand v. Key, 657 So.2d 1146 (Fla.1995)). Florida Rule of Civil Procedure 1.390 defines an "expert witness" as:
[A] person duly and regularly engaged in the practice of a profession who holds a professional degree from a university or college and has had special professional training and experience, or one possessed of special knowledge or skill about the subject upon which called to testify.
Further, section 90.702, Florida Statutes, provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion....
In the instant case, we cannot say that the trial court abused its discretion by allowing the witness to offer his opinion regarding the amount of Right Way's lost profits. A witness may testify as an expert if he is qualified to do so by reason of knowledge obtained in his occupation or business. Weese v. Pinellas County, 668 So.2d 221 (Fla. 2d DCA 1996). The expert witness testified that he was a public adjuster who prepared appraisals and negotiated settlements for property owners who had experienced loses. He testified that he was qualified to act as an accountant anywhere in Europe. The witness had lectured on business interruption and lost profits and had published articles on the subject. He had been appointed as an expert twice in federal court to appraise losses and had been found qualified in Florida state courts to testify as an expert witness regarding lost profits. While there was no evidence that the expert witness had an accounting degree, a person does not necessarily have to have a degree in order to qualify as an expert. A person can be qualified to testify as an expert witness if the witness possesses special knowledge, experience or skill in the subject upon which the witness is called to testify. Fla. R. Civ. P. 1.390; § 90.702, Fla. Stat.
SIHLE also contends that Right Way's evidence of lost profits was too speculative to support an award for damages. We agree that the evidence of lost profits was speculative. First, the expert witness based Right Way's lost profits in part on projected sales to Florida Mulch, one of Right Way's customers. He relied on a letter Florida Mulch had written indicating *1001 that Right Way was to produce five to six loads of mulch per day, but Florida Mulch clarified at trial that the letter should have read five to six loads per week. The expert witness admitted that this would affect the overall projected revenue by one-fifth. Florida Mulch also testified that although it had business arrangements with Right Way, Right Way was not reliable because it did not timely provide its product to Florida Mulch. Also, in calculating the value of Right Way's agreement with Florida Mulch, the expert witness used the price of $12 per yard when the price range was $5-$12 per yard.
Second, the expert witness testified that while his calculations indicated that Right Way could make a $151,000 per month profit, he did not believe that Right Way would make that much per month immediately or even a year later. Actually, Right Way had been averaging only $30,000 per month before the fire, and the expert witness admitted that Right Way would have to increase its production by 250 percent to achieve its maximum capacity. Third, Right Way admitted that Right Way's tax returns never indicated a profit. In most cases, an award of lost profits requires a history of past profits over a reasonable time. Travelers Insurance Co. v. Wells, 633 So.2d 457 (Fla. 5th DCA 1993). Fourth, there had been testimony at trial that the price for mulch had decreased, and the expert witness testified that had the current price for mulch decreased, then Right Way's revenue would decrease.
Finally, the expert witness should have deducted amounts for salaries when calculating net profit. State Dep't of Transp. v. Manoli, 645 So.2d 1093 (Fla. 4th DCA 1994). The expert witness testified that he did not calculate the owner's salary because Right Way's owner did not pay himself a standard salary; he would withdraw money depending on Right Way's earnings. However, the expert witness was required to deduct a salary from the net profit. In Manoli, the court stated:
We recognize that in businesses like this one, the working owner's salary is not necessarily commensurate with the value of the owner's services. Here [the appellee] could have paid himself low wages, increasing his paper profit, or vice versa. Accordingly, on retrial, the reasonable value of [the appellee's] services, i.e., what he would have had to pay in the marketplace to get someone else to perform those services, will be admissible.
Id. at 1094.
Lost profits must be proven with reasonable certainty and be a natural consequence of the wrong. Brevard County Fair Ass'n, Inc. v. Cocoa Expo, Inc., 832 So.2d 147 (Fla. 5th DCA 2002); Forest's Mens Shop v. Schmidt, 536 So.2d 334, 336 (Fla. 4th DCA 1988). In the instant case, Right Way's calculations for lost profits were based on a series of assumptions which considered together, demonstrate the speculative nature of the award. Compare Lucas Truck Service Co. v. Hargrove, 443 So.2d 260 (Fla. 1st DCA 1983). The lost profits damages awarded to Right Way were speculative because Right Way's expert relied upon a series of assumptions: that Right Way would increase production by 250%; that Florida Mulch would pay the maximum price of $12 per yard and buy five or six loads daily; and that Right Way would not experience the same price decline that other mulch businesses had experienced. Moreover, the expert witness failed to deduct the owner's salaries from the profits.
Despite the expert witness' testimony that Right Way's lost profits amounted to $648,000, the jury awarded Right Way only $256,000 for lost profits.
*1002 We cannot affirm the judgment based on the jury's apparent rejection of some of the expert witness' testimony, however, because the fact remains that the expert witness failed to account for salaries and engaged in unwarranted speculation. See Manoli, 645 So.2d at 1094 n. 1 (declining to affirm the judgment on the basis that the jury verdict may have reflected a salary deduction because the expert erroneously testified that the officer's salary did not need to be deducted). Accordingly, the judgment is reversed, and the case is remanded for a new trial on damages. To recover lost profits, Right Way must provide competent evidence sufficient to satisfy the mind of a prudent, impartial person as to the amount of lost profits resulting from the destruction of the power screen. Sostchin v. Doll Enterprises, Inc., 2003 WL 1916687 (Fla. 3d DCA April 23, 2003).
AFFIRMED in part; REVERSED and REMANDED in part.
SHARP, W. and SAWAYA, JJ., concur.
NOTES
[1] SIHLE is not contesting the jury's findings that it was negligent and breached its contract, or the $90,000 award for the loss of the power screen; it is contesting the $256,000 jury award for lost profits.