549 So.2d 706 (1989)
ANTUN INVESTMENTS CORPORATION, Appellant,
v.
Martin ERGAS, et al., Appellees.
Nos. 87-906, 87-1813 and 87-2497.
District Court of Appeal of Florida, Third District.
September 19, 1989.
*707 Gary S. Phillips, North Miami Beach, for appellant.
Cooper, Wolfe & Bolotin and Sharon Wolfe, Giller & Kasdin, Miami, for appellees.
Before SCHWARTZ, C.J., and BASKIN, J., and JOSEPH A. COWART, Jr., Associate Judge.
BASKIN, Judge.
Antun Investments Corporation [Antun] appeals an adverse final judgment entered in an action to abate a nuisance and to recover damages. After considering the merits of the parties' contentions, we affirm in part and reverse in part.

I
Appellees Martin Ergas, and other owners of the Royal Palm Hotel,[1] [Ergas] instituted *708 an action in which they alleged that Antun, owner of the adjacent Poinciana Hotel, created and maintained a nuisance that caused them to lose business and incur expenses to abate the nuisance. Seeking injunctive relief and damages, they asserted that the Poinciana Hotel was vacant, infested with mice, a repository for trash, and inhabited by vagrants. At the conclusion of a non-jury trial, the court granted the requested relief. The trial court awarded Ergas $156,868 for profits lost during the existence of the nuisance;[2] $37,436 for out-of-pocket expenditures to rectify problems caused by the nuisance; $345,000 to enable the Royal Palm Hotel to regain its reputation in the industry; and $18,000 for the prospective loss of business during the Passover holiday. Antun's appeal ensued.

II

A.
Antun presents several grounds in support of its request for reversal. First, Antun contends that the trial court abused its discretion in admitting the reports of expert witnesses into evidence when the reports were not furnished to Antun's counsel in accordance with the time schedule set forth in the court's discovery order. Antun filed a motion in limine and objected only to the reports which set forth the experts' findings, but not to the testimony of the experts. Noting that Antun had not deposed either expert witness, the court refused to exclude the reports.[3]
In Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla. 1981), the supreme court held that a trial court's discretion in determining whether an unlisted witness may testify "should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party." That principle has been applied to determine the admissibility of an unlisted document. SNW Corp. v. Abraham, 491 So.2d 1223, 1225 (Fla. 4th DCA 1986). Here, Ergas provided Antun with copies of the reports two days before the trial commenced. The trial was conducted on Thursday and Friday, April 2 and 3; the court then recessed the trial until the following Friday, April 10, 1987.[4] Although sufficient time remained for Antun to take appropriate action, Antun neither deposed the expert witnesses nor requested a continuance in order to review the reports. Thus, any prejudice to Antun accruing from the admission of the reports was attributable to its failure to act. Financiera Asociada, S.A. v. E.F. Hutton & Co., Inc., 530 So.2d 497 (Fla. 3d DCA 1988). We therefore hold that the trial court did not abuse its discretion in admitting the reports into evidence.[5]

B.
Antun also challenges the damage awards. We address each award in turn.

1-OUT OF POCKET COSTS
We find competent evidence to support the award of out-of-pocket costs incurred *709 in restoring the property,[6] and therefore affirm the $37,436 portion of the judgment attributed to this element.

2-LOST BUSINESS PROFITS
Antun argues that Ergas failed to prove that the condition of the Poinciana Hotel was the proximate cause of Ergas' loss of profits. Antun contends that in the absence of such proof, damages are speculative. Although an improperly maintained vacant building may constitute a nuisance warranting recovery of damages, e.g., Puritan Holding Co., Inc. v. Holloschitz, 372 N.Y.S.2d 500, 82 Misc.2d 905 (1975), to recover lost prospective business profits Ergas was compelled to prove that "1) the defendant's action caused the damage and 2) there is some standard by which the amount of damages can be adequately determined."[7]W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348, 1351 (Fla. 1989); see Twyman v. Roell, 123 Fla. 2, 166 So. 215 (1936); see also Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA), cert. denied, 322 So.2d 913 (Fla. 1975). We have examined the record to determine whether it contains adequate proof.
Our review of the evidence discloses that Ergas proved that the nuisance maintained at the Poinciana Hotel caused the losses at the Royal Palm Hotel: witnesses testified that the Royal Palm Hotel guests refused to tolerate mice infestation, vagrants in the pool area, and security problems; guests checked out of the Royal Palm Hotel after observing conditions at the Poinciana Hotel; travel agents and tour operators refused to place customers at the Royal Palm Hotel after hearing of complaints; and witnesses confirmed that the source of these problems was the Poinciana Hotel. Expert testimony demonstrated that proper security at the Poinciana Hotel would have reduced crime and that pest control would have decreased the number of rodents at the Poinciana Hotel.
Antun asserts, however, that other factors were responsible for Ergas' loss of business: declining tourism in the area; the presence of other vacant buildings; and the decreasing number of elderly clients. It introduced evidence that many hotels on Miami Beach suffered break-ins, that the Royal Palm Hotel did not close its garbage container, and that the Royal Palm Hotel cooking utensils were washed outside the building. Antonio Jaar, president of Antun, *710 testified that many hotels on Miami Beach were closed, that the economic situation was quite bad, that Lincoln Road, a nearby shopping area, was deserted. The parties' experts also indicated that the property values in the area have increased as a result of speculation and "a degree of real growth," that tourism business "was up," and that the South Beach area had been improving. Accordingly, Antun argues, it should not be deemed responsible for losses to Ergas.
Although Antun submitted some evidence in support of its contention, we find no basis for relieving Antun of liability. The question of causation is an issue of fact to be determined by the trier of fact. Metropolitan Dade County v. St. Claire, 445 So.2d 614 (Fla. 3d DCA 1984); Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983). Although the evidence concerning causation is conflicting, there is record evidence which tends to prove that Antun caused Ergas' damages. See Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812 (Fla. 1938); Helman v. Seaboard Coast Line R.R., 349 So.2d 1187 (Fla. 1977). The evidence was sufficient to be submitted to the trier of fact. Additionally, "the fact that other sources besides the nuisance created by the defendant may have contributed to the injury complained of does not relieve [defendant] from liability or defeat plaintiff's right to enjoin [defendant] from maintaining such nuisance." 38 Fla.Jur.2d Nuisances § 14 at 414 (1982). For example, in W.W. Gay, 545 So.2d at 1348, the owner of a new hotel filed an action against the company that constructed the hotel's water system. The hotel owner attempted to prove that defendant installed a defective water system which created an odor problem, causing a reduction in occupancy at the hotel. The court held that "[t]here was competent and substantial evidence that the odor was a cause of reduced occupancy." W.W. Gay, 545 So.2d at 1351 (emphasis supplied).[8] Thus, Ergas' claim for damages was not foreclosed where Ergas demonstrated that the nuisance was a cause of its damages.
Because competent substantial evidence supports the lost profits award, affirmance is mandated. Ren-Del Enter., Inc. v. Florida Keys First State Bank, 539 So.2d 541, 542 (Fla. 3d DCA 1989) ("A finding of the trial court on disputed facts in a nonjury trial will not be disturbed by a reviewing court where the finding is supported by competent substantial evidence.").

3-PROSPECTIVE EXPENSES & 4-ANTICIPATED HOLIDAY LOSSES
We find no basis, however, for the award of projected advertising expenses totaling $345,000 to enable the Royal Palm Hotel to regain its repuation in the industry, and for $18,000 representing anticipated lost profits from the Passover holiday. Recovery of past and future damages is appropriate where a nuisance is permanent, Maloney v. Heftler Realty Co., 316 So.2d 594 (Fla. 2d DCA 1975); 38 Fla. Jur.2d, Nuisances, § 50 (1982); the assessment of damages for future harm is inappropriate where the nuisance is merely temporary. A & P Food Stores, Inc. v. Kornstein, 121 So.2d 701, 704 (Fla.3d DCA 1960); see Ford v. Dania Lumber & Supply, Co., 150 Fla. 435, 7 So.2d 594 (1942), "Future harm ... is nullified by the abatement of the nuisance through the injunctive processes of the court." Kornstein, 121 So.2d at 704. Because the court found that the nuisance was remediable and issued a permanent injunction abating the nuisance, Ergas is not entitled to damages for future harm.[9]

*711 III
In summary, we affirm the award of $37,436 for out-of-pocket expenses incurred in mitigating problems caused by the nuisance, and the award of $156,868 for lost profits. We reverse the awards of $345,000 for prospective costs and $18,000 for the Passover holiday.
Affirmed in part; reversed in part.
SCHWARTZ, C.J., and COWART, Associate Judge, concur.
SCHWARTZ, Chief Judge (specially concurring in part).
While I completely agree with the remainder of Judge Baskin's opinion, I concur with affirmance of the award for past lost profits only because of the supreme court decision in W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla. 1989). Were it not for that opinion, I would have concluded that the evidence of lost profits, which consists, I think, essentially only of baseless "net opinions" of purported experts, is far too speculative to justify recovery. W.W. Gay, 545 So.2d at 1351 (McDonald, J., dissenting); see Division of Administration, State Dep't of Transp. v. Samter, 393 So.2d 1142 (Fla. 3d DCA 1981), review denied, 402 So.2d 612 (Fla. 1981); Allapattah Community Ass'n, Inc. v. City of Miami, 379 So.2d 387 (Fla. 3d DCA 1980), cert. denied, 386 So.2d 635 (Fla. 1980).
COWART, Associate Judge, concurs.
NOTES
[1] The other owners/appellees include Caryl E. Unger and Arthur S. Unger, co-trustees of the Caryl E. Unger Trust, under the Will of Sylvia S. Rose, Deceased, Caryl E. Unger and Arthur S. Unger, as co-trustees of the Caryl E. Unger Trust, under the Will of Joseph M. Rose, Deceased, and Caryl E. Unger, individually.
[2] The Poinciana Hotel has been demolished. The parties entered into a settlement agreement pertaining to the injunctive portions of the final judgment and the contempt orders. We find no error in the imposition of the $10,000 contempt fine. See Applegate v. Barnett Bank, 377 So.2d 1150 (Fla. 1979).
[3] The names of the expert witnesses were provided on time. The court stated: "You don't know what his opinions are and what went into making up the report, you have no idea, because there was no deposition taken... . I'm going to overrule the objection, because you had the opportunity to depose him. You can't say he's going to give something different now than he would not have given back then."
[4] The transcript indicates the judge's willingness to finish the trial on April 27, unless the court was able to finish the trial at an earlier date. Antun's counsel requested the court to "keep us on standby ... with a day's notice."
[5] Antun also argues that the reports were not based on facts supported by the record, contained hearsay, and constituted summaries that Ergas did not disclose as required by § 90.956, Fla. Stat. (1985). Antun did not preserve these issues for review. See Alderman v. Murphy, 486 So.2d 1334 (Fla. 4th DCA 1986).
[6] Antun does not contend that in a nuisance action plaintiffs are not entitled to out-of-pocket costs incurred to abate the nuisance or loss of business during the nuisance. See Shamhart v. Morrison Cafeteria Co., 159 Fla. 629, 32 So.2d 727 (1947) (where plaintiff filed action to enjoin nuisance and to recover damages for loss of business, court found injunctive relief warranted and remanded for court to ascertain damages); Ford v. Dania Lumber & Supply Co., 150 Fla. 435, 7 So.2d 594 (1942) (recovery is limited to loss of use value of property during nuisance; where nuisance is remedial, it may be abated and damages would cease); Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp., 460 So.2d 510 (Fla. 3d DCA 1984) (in dicta, court opined that where excessive and irritating noise of rock-crushing machine that caused hotel guests to check out in large numbers resulted in loss of business, hotel may have nuisance action for damages suffered); Nitram Chem., Inc. v. Parker, 200 So.2d 220, 225 (Fla. 2d DCA) (quoting Prosser, Torts § 91 (3d ed. 1964) ("[T]he principal elements of damages are the value attached to the use or enjoyment of which he has been deprived, or  which amounts to a measure of the same thing  the loss of the rental or use value of the property for the duration of a temporary nuisance, ... or the income from an established business; ... as well as any reasonable expenses which he has incurred on account of the nuisance."), cert. denied, 204 So.2d 330 (Fla. 1967); 38 Fla.Jur.2d Nuisances § 50 at p. 455 (1982) ("[W]here a remedial nuisance is abated, the injury being a temporary one, the injured party's recovery should be limited to the damages resulting from loss of his property during the period of the nuisance."); see generally Keyes Co. v. Shea, 372 So.2d 493, 496 (Fla. 4th DCA 1979); Restatement (Second) of Torts, § 929 (1979); D. Dobbs, Remedies at p. 334-5 (1973) ("In addition to the depreciation measure of damages, the plaintiff in a nuisance case may recover the reasonable cost of his own efforts to abate the nuisance of or prevent future injury.").
[7] Although Antun does not present an argument as to the amount of the lost business profit award, we note that, as in W.W. Gay, 545 So.2d at 1351, the evidence on causation "was supported by studies prepared by reputable economic analysts and provided a sufficient standard to support experts' testimony concerning lost profits."
[8] Apparently the majority in W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla. 1989), disagreed with the dissent's position that "[l]ocation, design, economic conditions, high rates, poor service, or numerous other factors could have caused or contributed to [reduced occupancy rates]." W.W. Gay, 545 So.2d at 1351 (McDonald, J. dissenting). The dissent was based, in part, on the absence of evidence that prospective guests declined to come or to return to the hotel because of the odor from the water, that the odor did not extend to all the rooms, and that the odor dissipated after a short time. Here, however, the record contains testimony as to guests' complaints and their refusal to visit the hotel.
[9] The trial court stated that it recognized that future profits were not recoverable, but awarded Ergas damages for expenditures to regain their reputation in the industry. That award reimburses Ergas for an anticipated loss of future profits. The trial court may not do indirectly what it may not do directly. Tedder v. Video Elec., Inc., 491 So.2d 533, 535 (Fla. 1986).