FRANK, Judge.
The consolidated appeals in these matters present the challenge of James H. Porter, et al, (Porter) to the trial court’s order granting a new trial and the contentions urged by Saddlebrook Resorts, Inc. (Saddlebrook) that the trial court erred in the standards it followed in instructing the jury as to Saddlebrook’s liability and the element of damages. The jury verdict awarded the Porters $8,082,000.00. In reversing the verdict and judgment, we need not reach the question of whether the trial court abused its discretion in granting Sad-dlebrook’s motion for a new trial. The errors we find, compelling the result we reach, originate in the trial court’s exclusion of Saddlebrook’s evidence of reasonableness and the jury instruction departing from Westland Skating Center, Inc. v. Gus Machado Buick, Inc., 542 So.2d 959 (Fla.1989).
The factual setting and the events which occurred in the trial court, pertinent to our resolution, may be summarized as follows:
In 1972 the Porters sold a 460 acre parcel in the northeastern aspect of their property to Dean Refram and his family. That portion, at an elevation above the remainder of their land, was sold with the expectation that it would be developed. The Reframs developed the property into the Saddle-brook Country Club and, in 1979, sold it to Saddlebrook Resorts, Inc.
Saddlebrook completed the development of the property. In July 1983, the Porters initiated a nuisance action alleging that the development by Saddlebrook had increased the natural flow of surface water onto the Porters’ property. At a final pretrial conference, the Porters agreed that, in light of the then recent supreme court decision in Westland, the issue at trial would be whether the discharge of water from Sad-dlebrook’s property was reasonable. On the first day of trial, however, the Porters claimed that Saddlebrook’s liability turned on Pasco County Ordinance 82-02.[1] The trial court in a pretrial comment advised the Porters to “seriously think about” and “revisit” their reliance on the ordinance in light of Westland.
Saddlebrook at all pretrial stages and in its opening statement had based its case on the Westland reasonable use rule. Immediately following selection of the jury, however, the case changed judicial hands. As an apparent result, after opening statements and before the presentation of any evidence, the Porters again raised their theory that Saddlebrook’s liability should be measured solely by the question of whether it had complied with Ordinance 82-02. The Porters also moved to exclude all evidence of the reasonableness of Saddlebrook’s land use. The successor judge granted the Porters' motion, concluding that “the [Westland] reasonableness test has no bearing in this case,” and that a jury finding that Saddlebrook had violated Ordinance 82-02 would “resolve the issue of liability.” On this basis, the trial court excluded all evidence associated with the reasonableness of Saddlebrook’s land use. At the close of the evidence the court instructed the jury that if it found Ordinance 82-02 had been violated, “then such violation constitutes unreasonableness.” We demonstrate below the error committed by the trial court.
The erroneous instruction states as follows:
The Pasco County Comprehensive Plan was adopted by Pasco County as Ordinance Number 82-02, and provides that the drainage element of the Pasco County Comprehensive Plan, comprised of the *474 goals, objectives and policies set forth in said drainage element, shall constitute the formal planning document with which future development, growth, county development orders and county decision-making should be consistent. The Pasco County Comprehensive Plan and Drainage Element were adopted on February 2, 1982, by the Board of County Commissioners of Pasco County, Florida.
The drainage element of the Pasco County Comprehensive Plan provides as follows: One, developers shall prevent runoff and erosion problems.
Two, post development storm water discharge rates should not exceed prede-velopment storm water discharge rates.
Three, drainage systems should be designed so as to discourage the channelization of storm water runoff directly into natural surface water bodies.
Four, storm water systems should be designed to decrease velocity, enhance percolation and allow suspended solids to settle out.
Five, the drainage of environmentally significant wetlands and submerged land should be discouraged.
Six, development activity which will reduce the capacity of flood plan to store flood waters may be discouraged.
If the greater weight of the evidence supports the plaintiffs claim that the defendant made improvements to its land and thereby increasing or interfering with the natural flow of surface waters upon the property of the plaintiffs if such increase or interference with the surface waters was in violation of a county law, ordinance or regulation, then such violation constitutes unreasonableness.
In the face of Westland, it is difficult to perceive why the trial court instructed the jury as it did. The instruction “had the ... effect of requiring the jury to determine the reasonableness of [Saddlebrook’s] conduct based upon whether or not it complied with” Ordinance 82-02. Westland, 542 So.2d at 964. It cannot be gainsaid that our supreme court constructed its West-land opinion for the express purpose of eliminating divergent principles affecting the disposition of disputes of the kind at hand and to stress that “one’s compliance with a statute or ordinance may amount to evidence of reasonableness,” but “such compliance is not tantamount to reasonableness as a matter of law.” Id. (emphasis added). “[Ejvidence of [Saddlebrook’s] compliance with the [ordinance] could be properly considered as evidence of the reasonableness of its conduct, but not to the exclusion of other relevant evidence on that issue.”[2] Id. It is manifest from the foregoing that the trial court erred not only in resting the question of Saddlebrook’s liability on Ordinance 82-02 but also in foreclosing Saddlebrook from developing evidence of reasonableness in the actions it undertook affecting the waterflow relationship of its land and the land retained by Porter.
Finally, Saddlebrook’s second contention is that the damages awarded the Porters amounted to a double recovery deriving from the award of injunctive relief and compensation for future harm. We agree with Saddlebrook that future harm to the Porters’ property could be “nullified by the abatement of the nuisance through the injunctive processes of the court.” Antun Investments Corp. v. Ergas, 549 So.2d 706, 710 (Fla. 3d DCA 1989) (quoting A & P Food Stores, Inc. v. Kornstein, 121 So.2d 701, 704 (Fla. 3d DCA 1960)). Nevertheless, without passing upon the quality or sufficiency of the related evidence, we conclude that if the nuisance were abatable, and thus not permanent, the jury was enti- *475 tied to consider the Porters’ claimed diminution in the use value of their land and any resultant special damages such as loss of crops. Nitram Chemicals, Inc. v. Parker, 200 So.2d 220 (Fla. 2d DCA), cert. denied, 204 So.2d 330 (Fla.1967); D. Dodds, Remedies at 332-35 (1973). Alternatively, as the damages instruction contemplated, the cost of repairing or restoring the land may be the appropriate measure of damages.[3] See New Homes of Pensacola, Inc. v. Mayne, 169 So.2d 345 (Fla. 1st DCA 1964). In any event, although we find no error in the instruction, we note that it should have been worded more carefully in order explicitly to differentiate between a recovery for depreciation, which on this record would not have been justified, and a permissible recovery for the diminished use value of the land during, or special damages arising from, the presence of the nuisance.
Accordingly, but without passing upon or disturbing the injunctive order, we reverse and vacate the verdict and judgment. This proceeding is remanded for a new trial to be conducted in conformity with this opinion.
DANAHY, A.C.J., and ALTENBERND, J., concur.

. The trial court’s instruction, infra, generally describes the water drainage element of the ordinance.

. Any uncertainty we may harbor with respect to whether Ordinance 82-02 is even relevant to this proceeding stems from the fact that it is a comprehensive land use plan, adopted in obedience to section 163.3161, et seq., Florida Statutes (1982). A comprehensive land use plan is not a zoning ordinance and serves as a conceptual framework within which zoning is to be accomplished consistent with the Plan. Gardens Country Club, Inc. v. Palm Beach County, 590 So.2d 488 (Fla. 4th DCA 1991). Hence, those aspects of the trial court’s instruction identified by the words "Two," "Three,” "Four," "Five,” and “Six,” borrowed from the policy statement found in the comprehensive land use plan, are precatory, do not appear to be mandates regulating land development, and seem merely expressive of goals the County would seek to achieve through the zoning or permitting function.

. The trial court instructed the jury — "The measure of damages to real property is any loss of use and/or decrease in value of property or the restoration of the property if such cost is less than the decrease in value.”