613 So.2d 60 (1993)
DAVEY COMPRESSOR COMPANY, Appellant,
v.
CITY OF DELRAY BEACH, et al., Appellees.
No. 90-2969.
District Court of Appeal of Florida, Fourth District.
January 6, 1993.
Rehearing, Rehearing, Clarification and Certification Denied March 4, 1993.
Douglas M. Halsey and Kirk L. Burns of Douglas M. Halsey, P.A., Miami, for appellant.
Jeffrey S. Kurtz, City Atty., City of Delray Beach, Steven R. Berger and Bradley H. Trushin of Wolpe, Leibowitz, Berger & Brotman, Miami, and Ridgway M. Hall, Jr. and B. Michael Hodge of Crowell & Moring, Washington, DC, for appellees.
Rehearing, Rehearing En Banc, Clarification and Certification Denied March 4, 1993.
DELL, Judge.
Appellant, the Aero-Dri Division of Davey Compressor Company, appeals an adverse final judgment and 8.7 million dollar damage award in favor of appellee, the City of Delray Beach, Florida, resulting from appellant's toxic contamination of the groundwater beneath appellee's well field. We affirm the final judgment in favor of appellee and the award of past damages; however, we reverse the award of future damages and remand for a new trial on this issue.
Appellee supplies its citizens with potable water pursuant to a water consumptive use permit issued by the South Florida Water Management District (SFWMD). Appellee's use permit expires on December 10, 1997. Appellant operated an industrial facility engaged in the overhauling of air compressors. Appellant operated its plant within approximately one-quarter to one-half mile from appellee's well field. From 1981 to 1987, appellant dumped highly toxic solvents used to clean the air compressors directly onto the ground behind its facility. During this period, it purchased between 5,280 and 6,000 gallons of the toxic solvents. Appellant does not know the amount actually discharged.
In August, 1987, appellee discovered high levels of the toxic solvents in the groundwater beneath its well field. Appellee took corrective action which included the purchase of potable water from neighboring cities and the construction of an interim and a permanent water treatment *61 system to remove the solvents from the groundwater drawn from its wells.
Appellee sued appellant, among other defendants, upon statutory and common law grounds seeking injunctive relief, monetary damages for its response costs, and punitive damages. The case proceeded to trial by jury on the common law claims of negligence, nuisance, trespass and strict liability. The jury found appellant liable on all of the claims and assessed $3,097,488.00 in past damages and $5,600,000.00 in future damages against appellant for a total award of $8,697,488.00. The trial court rendered a final judgment and awarded damages accordingly.
Appellant raises six points in this appeal, only two of which require discussion. Appellant argues since appellee sued for injury to its real property, its damages cannot exceed the value of its property. We reject this contention. Appellant also argues since appellee only has a limited interest in the groundwater beneath its well field, it cannot recover damages beyond the expiration of its legal interest. We agree. Our decision renders moot appellant's arguments that the trial court erred in admitting computer modeling to predict long-term groundwater contamination and that the record does not contain substantial, competent evidence to support the award of future damages.
As a general rule, damages for injury to real property cannot exceed the value of the property. See Keyes Co. v. Shea, 372 So.2d 493, 496 (Fla. 4th DCA 1979) (a court cannot adopt the cost of restoration of real property as the measure of damages where the cost of restoration would exceed the value of the property). The record, however, shows appellee sought damages for all of its response costs and related expenses as a result of appellant's unlawful disposal practices. Therefore, appellee sued, not for injury to its real property, but rather for injury to its right to the use of the groundwater beneath its real property. In Miller v. Cudahy Co., 592 F. Supp. 976 (D.Kan. 1984), the district court awarded damages resulting from salt pollution of the freshwater aquifer beneath the plaintiffs' lands and stated:
The Court finds that the injury suffered by the plaintiffs is the injury to those growing crops caused by the inability to irrigate them, which is, in turn, caused by the presence of the salt in the groundwater. The plaintiffs suffer no injury from the abstract and ethereal damage to the substrata of their property.
Id. at 1001.
Appellee's damages resulted from foreseeable and direct expenses incurred as a result of appellant's negligent groundwater contamination. In Douglass Fertilizers & Chem., Inc. v. McClung Landscaping, Inc., 459 So.2d 335 (Fla. 5th DCA 1984), the court discussed the proper measure of damages under a negligence theory:
In tort cases, the rule, while stated differently, is basically the same, that the plaintiff may recover all damages which are a natural, proximate, probable or direct consequence of the act, but do not include remote consequences. Taylor Imported Motors, Inc. v. Smiley, 143 So.2d 66 (Fla.2d DCA 1962).
Id., 459 So.2d at 336. See also Miller, 592 F. Supp at 1005 ("It is a general principal that defendants are liable for the actual damages flowing from their negligence.").
Appellee's damages also resulted from costs incurred in abating the nuisance caused by groundwater contamination. In Antun Invs. Corp. v. Ergas, 549 So.2d 706 (Fla. 3d DCA 1989), the court considered the proper measure of damages for costs incurred in abating a nuisance:
Antun does not contend that in a nuisance action plaintiffs are not entitled to out-of-pocket costs incurred to abate the nuisance or loss of business during the nuisance. See ... Nitram Chem., Inc. v. Parker, 200 So.2d 220, 225 (Fla.2d DCA) (quoting Prosser, Torts § 91 (3d ed. 1964) ("[T]he principal elements of damages are the value attached to the use or enjoyment of which he has been deprived ... as well as any reasonable expenses which he has incurred on account of the nuisance."), cert. denied, 204 So.2d 330 (Fla. 1967) ... D. Dobbs, *62 Remedies at p. 334-5 (1973) ("In addition to the depreciation measure of damages, the plaintiff in a nuisance case may recover the reasonable cost of his own efforts to abate the nuisance of or prevent future injury.").
Id., 549 So.2d at 709 n. 6 (citations omitted). The record supports appellee's claim for damages incurred to abate the nuisance and for damages resulting from appellant's negligence. Therefore, the trial court did not err when it awarded past damages without regard to the value of appellee's property.
Appellant's next contention concerns appellee's interest in the groundwater beneath its well field. The supreme court addressed the issue of rights to groundwater in Village of Tequesta v. Jupiter Inlet Corp., 371 So.2d 663 (Fla.), cert. denied, 444 U.S. 965, 100 S.Ct 453, 62 L.Ed.2d 377 (1979), wherein it stated:
The State of Florida operates under an administrative system of water management pursuant to the terms of the Florida Water Resources Act. Ch. 373, Fla. Stat. (1972). The law prior to the Florida Water Resources Act did not allow ownership in the corpus of the water, but only in the use of it... .
The Florida Water Resources Act, in recognizing the need for conservation and control of the waters in the state (Section 373.016, Fla. Stat. (1973)) makes all waters in the state subject to regulation, unless otherwise specifically exempt. § 373.023(1) Fla. Stat. (1973). The Department of Environmental Regulation and the various water management districts are given the responsibility to accomplish the conservation, protection, management, and control of the waters in the state. § 373.016(3) Fla. Stat. (1973). In order to exercise such controls a permitting system is established which requires permits for consumptive use of water, exempting only "domestic consumption of water by individual users" from the requirements of a permit. § 373.219(1) Fla. Stat. (1973). Jupiter, in serving a 120-unit condominium, does not qualify as an individual user and thus must secure a permit in order to draw water from beneath its property. Without a permit Jupiter has no such property right to the use of water beneath its land for which, upon deprivation, it must be compensated through inverse condemnation.
Id., 371 So.2d at 670-71. Appellee, like Jupiter Inlet Corporation, has no right to the groundwater beneath its well field apart from its right pursuant to its water consumptive use permit issued by the SFWMD.
We find merit in appellant's argument that appellee failed to establish its right to the use of the groundwater beneath its well field beyond December 10, 1997, the expiration date of its water consumptive use permit. The record shows the only evidence offered on the permit extension consisted of one witness who could only speculate as to whether the SFWMD governing body will renew appellee's water consumptive use permit when it expires in 1997. The Director of the Water Use Management Division of the SFWMD who makes the final recommendation of whether to approve or deny a water consumptive use permit to the SFWMD governing board testified:
Q ... would you agree that it's speculative as to whether or not the City of Delray Beach would be reissued a permit in 1997?
A It would be speculative on my part, yes.
The record also shows the SFWMD has previously restricted appellee's use of its eastern well field because of natural salt water intrusion.
Since appellee failed to establish its legal interest in the groundwater beneath its well field beyond the expiration date of its water consumptive use permit, appellee cannot recover future damages after the expiration date of its permit. See Sallas v. State Road Dep't, 220 So.2d 378, 379-80 (Fla. 1st DCA 1969). Therefore, the trial court erred in awarding appellee damages beyond the expiration date of its water consumptive use permit.
*63 Accordingly, we affirm the award of past damages in the amount of $3,097,488.00. We reverse the award of $5,600,000.00 for future damages and remand for a new trial to determine the amount of appellee's future damages up to and including December 10, 1997 and for such further proceedings as may be consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
POLEN, J., and SEIDLIN, LARRY, Associate Judge, concur.